## McCraney v. McCraney.

To entitle a wife to dower, there must be marriage, seizin, and the death of the husband.

After marriage and seizin, the right of dower, is inchoate; and on the death of the husband, it becomes perfect, unless the wife has voluntarily, or otherwise, parted with or forfeited the right.

To give the wife a right of dower, the marriage or coverture must have continued until the time of the death of the husband; or, if not so continuing, her right will not be preserved, if the marriage was dissolved from her fault, the husband being the innocent party.

Where there is a decree of divorce from the bonds of matrimony, in favor of the husband, for the fault of the wife, of the pendency of the application for which she had personal service, the wife, after the death of the husband, is not entitled to dower, nor to a portion of his estate, by virtue of the former marital relation, so long as such sentence of divorce remains in force.

A decree in chancery, setting aside a sentence of divorce adjudged against a wife, and declaring the same void, in part, or so far as to give the wife a portion of the estate of the husband, and at the same time leaving so much of the decree as dissolved the marriage contract, in force, is inconsistent, and cannot be supported either upon principle or authority.

There cannot be two widows, lawfully entitled to dower in the same estate, any more than there can be two wives legally entitled to the support, care, protection, and name of the same husband.

In cases of divorce, it is not necessary that the petition should be sworn to, in order to give the district court jurisdiction of the cause. The affidavit is not a jurisdictional requisite.

Where the cause for a divorce called for by a statute, is a continuing one, if the cause has continued after the passage of the act, the period required therein for its continuance, it is sufficient, though the cause may have commenced before the enactment of the statute.

McCraney v. McCraney.

Where a husband filed a petition for divorce, under the act of January 17, 1840, on the ground of the wilful desertion of the wife for the space of one year, which petition was filed in October, 1841, and alleged the desertion to have taken place in August, 1837; *Held*, That the case came within the provisions of the act.

*Appeal from the Dubuque District Court.*

Saturday, September 12.

Bill in equity, to so far vacate and set aside a decree of divorce, as to give complainant her dower, and a distributive share of one-third, in the personal estate of her deceased husband. The material facts of the case, are as follows: Thomas McCraney was divorced from the complainant, in 1841. The petition was filed by him, and charges her with willful desertion, from August, 1837, to the time of his application. Of the pendency of this application, she had personal service, but to it made no defence. After their separation, they continued to reside in the same county, and near each other, until his death in May, 1855. He and respondent were married in the same county, in October, 1844, and to them were born three children. The decree of divorce recites, that "the bonds of matrimony heretofore existing between Thomas McCraney and Susan McCraney, be and the same are hereby dissolved; and that the said Thomas McCraney be, and he is hereby, discharged from the same; and from this day, he be at liberty to contract, and to be contracted with, in as full and ample manner, as he could have done, had such marriage contract never existed." This bill was filed in July, 1855, and prays to so far vacate and set aside the decree of divorce, as to give to complainant her dower, and a distributive share of one-third in the personal estate of the deceased husband. As grounds for this relief, the bill charges that the decree of divorce was obtained by, and through, the fraudulent practices of the said Thomas, and rendered by the court, when it had no jurisdiction of the subject matter. Complainant does not ask to disturb said sentence of divorce, except so far as it may operate as a bar to her right

of dower in the real, and a distributive share in the personal, property of the husband. The relief prayed for, was granted by the court below, the decree expressly reciting, that the sentence of divorce shall not be considered as vacated in any other respect, except to the extent to allow the complainant to recover her dower, and distributive share, as aforesaid. The respondent appeals.

*Wiltsey & Blatchley*, for the appellant.

We ask the attention of the court to a preliminary question, which arises at the outset of this case. Has complainant selected the proper tribunal in which to try the grand question of this case, viz: complainant's right to dower. This is a proceeding in chancery; it is so pronounced by complainant, and the form of the pleadings, the manner of taking the testimony, the method of procedure throughout, and the character of the decree, have been such as belong to chancery. The jurisdiction of chancery, in regard to the assignment of dower, is admitted; but the authorities universally recognize a clear and wide distinction, between the right of dower and its enforcement. That chancery should interfere, for the purpose of enforcing this right, when admitted, is almost a matter of course; but when the right itself is drawn in question, we understand the authorities to be equally clear, that the question must be referred to the courts of law. The right of dower is purely a legal right; and the question of the right is, therefore, a purely legal question. When the right of dower in the claimant, is denied by the respondent, and a legal question as to the right, is thus made, the courts of chancery decline to consider it, and refer the claimants to the courts of law.

"Notwithstanding the readiness, which the court of chancery now manifests, to give relief to widows claiming dower, it seems universally admitted, that the question of right, if controverted, must be sent to law, to be tried by a jury; no case having ever gone the length of holding, that

McCraney v. McCraney.

when the parties are before the court, upon a bill for dower, and the title of the plaintiff to be endowed, is denied by the answer, the court has any incidental jurisdiction, to inquire into that question itself." Park's Law of Dower, 329.

"In consequence of the widow's title being purely legal, when any question of dower, has arisen in a court of equity, and doubts have been entertained of the widow's title, it has been the constant practice, to put her to bring a writ of dower." Roper's Husband and Wife, 446.

"The court will not assist a widow, in the assignment of her dower, out of her husband's estate, if there is any doubt as to her legal right; therefore, if her title to dower be disputed, it refers to the decision of a court of law, either by directing an issue, or by ordering the bill to be retained for a certain time, with liberty to the plaintiff, to bring a writ of dower, as she may be advised." 2 Daniel's Chy. Prac., 1343.

"When the legal title to dower is in controversy, it must be settled at law." 4 Kent, 71. See also Bright's Hus. and Wife, 420–1; *Mundy* v. *Mundy*, 2 Ves. Jr. 122; Willard's Eq. 697; Tom. Law Dict. T. Dower; 2 Leading Cases in Equity, 505.

If the court, in this case, should take upon itself to decide the question of the right of dower, still, if the question to be decided is a purely legal question, the court, it would seem, in coming to its decision, should be governed by purely legal considerations. It must be decided as it would be decided by a court of law. The plaintiff must make out a legal case in behalf of the prosecution, and the defendants are restricted to a legal defense. The rules and doctrines peculiar to a court of equity, are not applicable. The right of dower is derived from the common law and from statute. In no respect does it owe its existence to chancery. If the right has any existence at all, it is as a legal right. The right being a legal right, it follows that if a woman is not dowable at law, she is not dowable at all. We know of no equitable right of dower, as distinguished

from the legal right. To be sure, a woman may be dowable in an equitable estate, and in this sense, there may be said to be an equitable right of dower; but when the question is, whether a woman is entitled to any dower at all, in a decedent's estate, can there be any such thing as an equitable right, as contradistinguished from a legal right? The right of dower exists by virtue of the Code, and the statute of 1853. Whether the right exists, therefore, in any particular case, depends upon the interpretation given to these laws. Under these laws, can a court of equity make the right any different from what it would be in a court of law? Can a court of equity make out a right of dower, unknown to the statute, unknown to the law, and unknown to the courts of law? This seems to us to have been done by the court below. A sort of equitable right of dower has been allowed, which, it seems confessed, would not be recognized in a court of law. And the right allowed, instead of being what the law prescribes, an estate, as at common law, in one-third of the real property, and an absolute title to one-third of the personal property, only extends, as seems to have been hitherto supposed, to the property of which the decedent died seized; thus restricting the right by boundaries, unknown to the law—in fact, creating a new species of dower, of which we find no mention in the statute. It seems admitted that the legal right of dower, as defined by the statute, is in the defendant, Mary Ann, and, at the same time, there is contrived to be another—an equitable right of dower—in the complainant, in the property of which McCraney died seized. As to the point, that the right of dower is strictly a legal right, see, further, Story's Eq. Jur., sections 624, 630; 1 Bright's Hus. and Wife, 321. "Dower is a mere legal demand." 1 Mad. Chy., 243; 1 Fonblanque's Eq.,'22, and note.

We propose next, an inquiry as to the nature and limitations of the right of dower. The decree below grants complainant a qualified right of dower, without impeaching the validity of the second marriage, or in any manner affect-

ing the rights of the defendant, Mary Ann, as a wife and widow. We think that the authorities do not authorize such a decree; that there is no such thing known to the courts, as a right of dower in one woman, while another woman is admitted to have been the lawful wife at the time of the husband's death. In this investigation, it appears to us, that should be kept in mind, which seems abundantly shown by what has been said before, viz : that dower is a legal right, and a legal title to the same must be made out. We understand the authorities to be, without exception, in favor of the proposition, that she who was the lawful wife at the time of the husband's death, is entitled to dower, and she alone. The maxim, *ubi nullum matrimonium ibi nulla dos*, seems uniformly applied to exclude all right of dower in any other woman than the legal wife, at the husband's decease.

This doctrine is distinctly recognized as far back as Bracton, who says: " *Quamdiu duravit matrimonium, duravit dotis exactio, eo deficiente deficit dotis petitio.*" He adds, that if the marriage be impeached for consanguinity or other cause, it would be a good defence that the marriage was not dissolved, nor a divorce decreed, in the lifetime of the parties. Coke, from whom the above quotation is made, (Co. Lit. 33, b.,) adds, " But if they were divorced *a vinculo matrimonii* in the life of her husband, she loseth her dower."

" The qualifications of the widow, which are necessary to give her a title to dower, are first to be considered. She must have been the lawful wife of the deceased husband, out of whose lands she claims this estate. And, not only must she have been lawfully married, but the marriage must have continued undissolved till the husband's death ; for if they have been divorced *a vinculo matrimonii*, she cannot be endowed." Clancy's Husband and Wife, 197.

" The claimant demanding dower, must be the actual wife of the person at the time of his decease." Lambert on Dower, 14. This doctrine has received the emphatic sanction of the most recent, and, we think, beyond all com-

parison, the most able and thorough writer upon the marriage relation; indeed, we are much at fault, if his work does not mark an era in the history of the law upon this subject. Bishop says (section 661) : " It is the clearly established common law of this country, that no woman can have dower in her husband's lands, unless the coverture were continuing at the time of his death. The reason appears to be, that, as the common law never recognized any right of dower, unless the woman were covert when the husband died, and so she were left his widow, the court cannot create such right in her, by construction, merely because, in consequence of a legislative enactment, she is found in circumstances unknown to the common law. And this result is in harmony with the universal doctrine, that the divorce we are considering, puts an end to all rights, (as the husband's to the wife's choses in action, and to courtesy,) resting upon the marriage, and not actually vested." In the second edition, the case of *Levins* v. *Sleator*, 2 G. Greene, 609, is referred to as authority for this position. See, also, Co. Lit., 32 a. ; 2 Black. Com., 130 ; Tom. Law Dict. T. Dower ; 4 Kent's Com. 54 ; Bouv. Dict. T. Estate in Dower, section 25. There is but one inference possible to be drawn from these authorities. She who is entitled to dower, is the legal wife at the time of the husband's death. A divorced woman is not a legal wife, and the conclusion is inevitable, that she cannot be entitled to dower in the estate of her divorced husband. That divorce is a bar to dower, and to all rights depending upon the marriage, and not vested at the time of the divorce, is the unanimous declaration of all the authorities, English and American, except the case of *Wait* v. *Wait*, in New York, referred to in Bishop, section 662. Vide Com. Dig. A. 2 ; Cruise's Dig. Title 4 chapter 2, section 10 ; 4 Kent, 54 ; Bishop, section 661.

But there is no need of accumulating the multitude of authorities, with which the books swarm in support of this doctrine. The point has been adjudicated by our own Supreme Court, in *Levins* v. *Sleator*, *supra*. The court hold

divorce to be a bar to dower, on the express ground that the wife, after divorce, is no longer a wife, but in that particular is legally dead, and say: "The divorce terminated "the relation of husband and wife; consequently, A. E. "Sleator, at the death of David Sleator, could claim no ben- "efit from his estate from that relation. She was not his "wife; in that particular she was legally dead, and conse- "quently could acquire no dower in his estate upon his de- "mise. After his divorce, D. Sleator may have married "a second wife, and if she had survived him, as his wife, "her right of dower to his real estate, could not be ques- "tioned. It will hardly be claimed that there could be two "rights of dower in the same estate."

Is there any possible way of avoiding the conclusion from these authorities, that a woman, to be entitled to dower, must be her husband's legal wife at the time of his death, and that a divorced woman is not such a legal wife? In the present case, the defendant, Mary Ann, is admitted to have been the legal wife at the time of her husband's death, and the complainant had been divorced; and it is not attempted to question the character of said defendant as a lawful wife, but this being expressly affirmed, a peculiar equitable dower is sought in behalf of complainant. Thus, an equitable dower is given to one woman, and the legal dower is given to another; and the very thing is actually done, which our Supreme Court thought nobody would have the face to claim—two rights of dower are allowed in the same estate. Who ever heard of an equitable right of dower in one woman, in addition to a legal right of dower in the same estate in another woman? Is there any such thing known to the law? Is not, to allow an equitable right, in addition to the legal right, under such circumstances, doing the very thing which Bishop, in the foregoing extract, says the the courts cannot do—is it not creating, by dint of judicial construction, an estate and interest in property of which the law makes no mention?

There is no case which supports any such decision as that given in the court below in the present case. In this

case, dower is decreed to one woman, while it is admitted that another woman was the lawful wife at the time of the husband's death. There are cases in the books, by the ten thousand, and they have been pretty thoroughly gone over by counsel for complainant, but they have not produced, and cannot produce, one in which any such decree was ever rendered. No case can be shown in which one woman is allowed dower, when another has been considered a lawful wife. No case can be shown in which a woman has been allowed dower on any other ground than that she was the lawful wife, and the only lawful wife, at the time of the husband's death.

The only case cited, which is pretended to countenance any other doctrine than this, is the case of *Gaines* v. *Gaines*, 9 B. Monroe, 295. This is in some respects a curious case. The Kentucky legislature passed an act pronouncing a divorce, while a bill for the same thing was pending in the courts, and the man died almost immediately afterward. The widow brought suit for dower, notwithstanding the legislative divorce. It should be remarked here, that the circumstances of the Kentucky case, are not like those of the present case. In the Kentucky case, if the claimant was not entitled to dower, at least no one else was; if the claimant was not the lawful wife, at least no other woman pretended to be. The Kentucky court do not pretend to grant the claimant dower, and at the same time admit that another woman was the lawful wife at the time of her husband's decease. So that, in any point of view, the case would hardly seem to be authority for the decision in the court below. In the Kentucky case, the court devote page after page, to a discussion of the constitutional power of the legislature, to pass such an act of divorce, and come to the conclusion that the act was unconstitutional and void; but though, in their opinion, they affirm the act to be void for unconstitutionality, they refuse to declare it so by their decree. This delicacy on their part, was certainly extraordinary. If, in fact, the said act was void for want of power to enact it, it was equally void, whether so declared by de-

cree or not. It was so much blank paper, and of no effect for any purpose. It is difficult to see, therefore, what was to be gained by declining to pronounce it so in their decree. Bishop quotes a portion of this decision, in section 796 of his work, and commenting on the case in the next section, says: "Upon this case, it may be observed, that the claim " which the woman sought in her supplemental bill to en- " force, depended solely upon her being his widow, that is, " upon the *vinculum* of marriage having been in full force " at the time of his death ; so that if the legislative divorce was valid for any purpose, it must have defeated the suit." And for authority for the first proposition, refers to our case of *Levins* v. *Sleator*.

We think the authorities we have cited, establish beyond controvery, that only one woman is entitled to dower, and she the lawful wife at the time of the husband's death ; that the right of dower is exclusively a legal right, and there is no such thing known to the law as an equitable right, in addition to the legal right, especially in a different woman ; and we think it is beyond the competency of a court to legislate such a right into existence. In order to entitle complainant to dower, it is therefore necessary for her to show that she was Thomas McCraney's legal wife, at the time of his death. It is plain that she was not such a wife, unless the decree of divorce was a nullity. And if the decree of divorce was a nullity, and complainant was a lawful wife at the time of her husband's death, it is equally plain that the defendant, Mary Ann, was not a lawful wife, for a man cannot have two lawful wives at the same time. This last inference, so plain and inevitable from the general doctrine, is sought to be avoided, by holding that the decree of divorce, though voidable, continued in force until judgment of avoidance, and the second marriage, though voidable, continued in force, until judgment annulling the divorce, and when such judgment be pronounced, it would not avoid the second marriage and the divorce *ab initio ;* the divorce would simply cease to exist, and the second wife cease to be a

wife. This notion is entirely due to a reading of the English authorities, which is palpably erroneous. But admitting it, we do not see that it helps the complainant; the divorce, even according to this doctrine, being only voidable, not void, and no attempt being made to avoid it, during the lifetime of the husband, the second wife continued to be a lawful wife up to the time of her husband's death, and was his lawful wife at that time; and such being the case, the law recognizes her as the one entitled to dower, and no one else. The proposed avoidance of the decree of divorce, therefore, if it does not affect the decree back of the date of avoidance, comes too late to play any part in the question of title to dower.

But we have said the doctrine is due to a misreading of the English authorities. There are, in England, what are called voidable marriages. These marriages are as good as any, until annulled, and they may not be annulled after the death of one of the parties; but if, upon proceedings had during the lifetime of the parties, they are annulled, the sentence of nullity most certainly relates back, and avoids the marriage *ab initio*, and bastardizes the issue. "So, if a man marry, and be afterwards divorced *a vinculo*, the issue between them born, before or after divorce, will be bastards." ' Com. Dig. T. Bastard (4). The whole English doctrine on the subject of voidable marriages, is succinctly stated by Reeve, in his work on the Domestic Relations, 204: "Such marriages may be dissolved by a sentence of divorce in the spiritual courts; and the divorce in these cases, is *a vinculo matrimonii*, by which the issue are bastardized. Although the law considers such marriages as good, until there is a sentence of divorce, yet the divorce proceeds upon the ground that the marriage is void *ab initio*; and when sentence is rendered, the marriage is considered as void *ab initio*. But if the husband or wife had died before sentence of divorce, the marriage could not have been impeached."

The reason given in the English authorities, as in the case of *Brownsword* v. *Edward*, 2 Vesey, Sr. 245, decided

McCraney v. McCraney.

by Lord Chancellor Hardwick, for refusing a sentence of divorce *a vinculo*, after the death of one of the parties to the marriage, is, that the issue of a marriage, after the death of one of the parties, should not be bastardized. The idea is, not that the children of a marriage should not be bastardized after the death of one of their parents, and therefore a sentence of nullity shall not have that effect; but it is, that the issue should not be bastardized after the death of a parent, and therefore no sentence of nullity should be allowed.

The doctrine in regard to voidable divorces is the same, except that some of the authorities seem to hold, that a sentence of divorce may be avoided, after the death of one of the parties to it. But the effect of a decree of avoidance is the same. It relates back, and avoids the divorce *ab initio ;* and if there has been a second marriage, of course, it renders that marriage null, and bastardizes the issue. As long, however, as the decree of divorce stands, unavoided by a decree of avoidance, it is good, and the second marriage under it is good; but as soon as a decree of avoidance is had, the decree of divorce, and the marriage under it, are both void *ab initio*, and the children of such marriage, are bastardized. *Burie's Case*, 5 Co. 99, which is cited to contradict this position, seems to us, clearly and conclusively in its favor. This was an action in *ejectione firmae*. The success of the plaintiff in the action, depended upon showing the issue of a second marriage, after a decree of divorce, to be illegitimate; this illegitimacy was attempted to be shown, by impeaching the divorce for fraud. The court says: "It is clear, that by the divorce (*causa frigiditatis*), the marriage is dissolved *a vinculo matrimonii*, and by consequence, either of them might marry after; then, admitting that the second marriage was avoidable, yet it remained a marriage, until it was dissolved, and by consequence, the issue that is born during the coverture, (if no divorce be in the life of the parties), is lawful." It will be seen that the case treats the second marriage as voidable; but how voidable? No

way of avoiding it, appears to have been suggested, except by nullifying the decree, of divorce for fraud. When, therefore, the voidability of the second marriage is spoken of, no reference is made to anything irregular in the second marriage itself, but the voidability is a consequence of the voidability of the divorce. And as the issue of the second marriage cannot be bastardized, after the death of one of the parties, therefore, a sentence of nullity, against the decree of divorce, which would have that effect, by avoiding the second marriage, cannot be pronounced after the death of one of the parties. The inference from the case is inevitable, that if the second marriage should be avoided during the lifetime of the parties, by a decree avoiding the divorce, the issue would be bastardized; and so the issue would be bastardized by such a decree, after the death of one of said parties; and because such would be its effect, such a decree shall not be pronounced after the death of one of said parties.

Comyn gives the substance of this case as follows: (Com. Dig. Baron and Feme C. 3). "If there be a divorce upon evidence, which shows a perpetual impotence, *quoad hanc*, and the husband afterwards marries and has issue by another wife, the issue shall be legitimate; for the first sentence shall be in force till repealed, and the second marriage good, unless it be disolved in the life of the parparties." Again, under the title Bastard (B). "So, if a man have a child by a second wife, though he was divorced from his first for impotence, the child shall not be a bastard; for he may be *habilis et inhabilis diversis temporibus*. Baron and Feme, (C. 3.) Though the divorce was *propter perpetuam impotentiam*. R. Mo. 227. Unless the divorce be annulled in the life of the parties; 1 And. 185, 2 Lec 169." It will be seen that this last phrase, takes it for granted, that to annul the divorce, would bastardize the issue of the second marriage, and therefore, the divorce shall not be held null, except during the life of the parties to that marriage. For another statement of *Burie's case*, by Gibson, see Bishop, section 54. This

statement supports the interpretation which we have placed upon it. See also quotation from case of *Welde* v. *Welde*, 2 Lee. 580, 586, in note to said section 54. Again, Bishop, (section 694), says: "We have already had occasion to consider one illustration of this doctrine, in respect to impotence; where it is held that, if parties are divorced for it, and the alleged impotent person marries again, and has children, the spiritual court may annul the sentence of divorce, even after this second marriage; thus reviving the first marriage, and rendering the second, which was originally good, a nullity."

The canonical rule in regard to the voidability of a decree of divorce, is somewhat different. According to this rule, a marriage may not be avoided, except during the lifetime of the parties; but a sentence of divorce may be dissolved at any time, even after the death of the parties, following the ecclesiastical maxim, "*sententia contra matrimonium nunquam transibit in rem judicatam.*" This doctrine, Bishop says, (section 695) is clearly supported by the Roman Canonical authoities, and is uniformly assumed by text writers, and frequently by the judges, as being law in the ecclesiastical tribunals; but he significantly adds, that it by no means follows, that it is so in the latter, because found in the former. When the ecclesiastical law comes in conflict with the statute or common law, it seems that the former has to yield. *Vide*, Bishop, sections 5–8. We understand the ruling under the common law to be, that neither a marriage nor a sentence of divorce, can be called in question after the death of the parties. In the case of *Robertson* v. *Lady Stallage*, 2 Croke, 186, it was resolved, "that a divorce being by sentence in the spiritual court, between Keen and his wife, *causa praecontractus*, or other cause, the parties being dead between whom it was, the court of awards cannot now examine it, to prove another heir against that sentence."

Comyn, whom we understand to be of the very best authority as to what is common law, in his digest, T. Baron and Feme, (C. 6,) says: "But a divorce cannot be prose-

cuted after the death of the parties. R. 1 Rol. 360, H.; 1 Sal. 121. So, a marriage cannot be drawn in question upon any collateral surmise, after the death of the parties; and if it be, a prohibition goes. 1 Rol. 360, 1, 50, 52. So, a divorce by sentence in the life of the parties, cannot be re-examined after the death of the parties. R. 2 Croke 186." See also authorities before cited. Later English judges, refuse to admit the ecclesiastical maxim to be law. *Vide Norton* v. *Seton*, 3 Phill. 149 (13, E. E. R. 387–8): Bishop, section 695. *Kenn's Case* is cited, as supporting a different doctrine; and so it does to a certain extent, for it says: "Sentence of divorce may be repealed, after the death of the parties, but no divorce can be, for that will bastardize the issue." This follows the canon law doctrine, which has since been discarded, as we have shown. But when to repeal a divorce, dissolves a second marriage, and bastardizes issue by it, is *Kenn's Case* authority for such a repeal, after the death of the parties? The words of the resolution do not say so, and it seems to us, we should be cautious about charging such a sentiment upon a court, by inference. If this is the doctrine of *Kenn's Case*, it is one which has never been followed, either in England or this country. It will be seen that all the authorities, ecclesiastical and law, take it for granted, that a sentence of divorce annuls the marriage *ab initio*, and a sentence of nullity of divorce, annuls the divorce *ab initio*, and annuls a second marriage; and it is because these sentences are attended with these effects, that the rule is established, that such sentences shall not be had after the death of parties to the marriage; for the common law will allow none to be bastardized after the death of a parent.

In this country, the English doctrine, that a divorce *a vinculo* annuls the marriage *ab initio*, is not adopted. Such a divorce here, simply ends the marriage relation. The parties then become to each other, in the language of our own Supreme Court, legally dead. But that a sentence annulling a divorce, acts *ab initio*, is the law in this coun-

try, as well as in England.   A sentence of nullity against a divorce, was had in one of the Pennsylvania courts, and the Supreme Court expressly state, that this sentence annulled a second marriage, entered into on the faith of the divorce, and bastardized the issue.  See *Allen* v. *McClellan*, 2 Jones, Pa.   And this must always be the doctrine ; any other would be attended with consequences too obvious to require mention, and too monstrous for endurance.   See, also, *Greene* v. *Greene*, 2 Gray, 361.   The Kentucky Supreme Court, in a recent case, *Ellen Bell* v. *Joshua Bell et al.*, decided at the last December term, hold that a voidable marriage is good, until avoided by judgment of dissolution, and that such judgment cannot be rendered after the death of one of the parties.   This case is not yet reported, but we have a manuscript copy of the opinion given.

We think the authorities we have cited, establish the following propositions beyond controversy : that the right of dower is exclusively a legal right ; that she who is the lawful wife at the time of the husband's death, and she only, is entitled to dower ; that there is no such thing as an equitable right of dower, in contradistinction from the legal right, especially in another person than the one who is admitted to have been the lawful wife at the husband's death ; that according to the English rule, a divorce *a vinculo* annuls the marriage *ab initio*, and bastardizes the issue, and a sentence annulling a divorce, avoids the divorce *ab initio*, nullifies a second marriage, and bastardizes the issue ; that because these sentences are attended with these effects, the rule, at least at common law is, that no sentence of divorce shall be allowed, at least after the death of the parties to the marriage, and that no sentence, avoiding sentence of divorce, shall be allowed, after the death of a party to a second marriage under it.

The legal propositions which we have discussed, seem to us to absolutely dispose of this case.   There are other objections to complainant's claim, which seem to us equally insurmountable.   Complainant seeks the aid of a court of

equity for the purpose of removing the decree of divorce which stands in the way of her claim to dower. This, as we have seen, can only be done by nullifying the decree *ab initio*. Will a court of chancery lend its aid to nullify a decree of divorce, in order to give a party dower? Tomlinson's Law Dictionary, Title Divorce, answers this question directly in the negative : "Upon the 'divorce of a man and his " wife, equity will not assist the wife in recovering dower at " the husband's death, but shall leave her to the law; neither "ought the spiritual court to grant her administration, she "not being such a wife as is entitled to it; nor will the " chancery decree her a distributive share." This rule, thus set forth so clearly and distinctly, seems to us eminently worthy of support in courts of chancery. That such courts should not put forth their peculiar powers to disturb decrees, upon the continued validity of which depend so many interests and relations, both in regard to property and status, would seem to be the emphatic dictate of equity; for such decrees could hardly be disturbed in any case, without causing more harm and suffering to the innocent, than good to the aggrieved.

There is one other point, and only one, to which we desire to call the especial attention of the court—the lapse of time after the decree, before complainant sought relief against it. Courts of equity, as we understand the matter, demand reasonable diligence, and refuse to lend their aid in the enforcement of stale demands. The whole equity doctrine on this subject has been embodied by Lord Camden, says the Supreme Court of the United States, in the case of *Bowman* v. *Wathen*, 1 How. 193, " with a succinct-"ness, and at the same time with a comprehensiveness, " compassing within a few sentences, almost a system of " equity jurisprudence, when he declared in *Smith* v. *Clay*, " 3 Brown's Chancery Reports, 640, in note, that a court of " equity, which never is active in relief against conscience " or public convenience, has always refused its aid to stale " demands, where the party has slept upon his rights for a " great length of time. Nothing can call forth this court in-

McCraney v. McCraney.

"to activity, but conscience, good faith, and reasonable dil-
"igence.   Where these are wanting, the court is passive
"and does nothing; laches and neglect are always discoun-
"tenanced, and therefore, from the beginning of this juris-
"diction, there was always a limitation of suit in this court."
Again, the same court, quote from Sir W. Grant, that
"courts of equity, by their own rules, independently of any
"statutes of limitation, give great effect to length of time,
"and they refer frequently to the statutes of limitation, for
"no other purpose than as furnishing a convenient meas-
"ure for the length of time that ought to operate as a bar
"in equity of any particular demand."   These doctrines
have been affirmed over and over again in the Supreme
Court of the United States.  See cases referred to in *Bow-
man* v. *Wathen*, and in other courts.

*Smith, McKinlay & Poor*, for the appellee, contended:

1.  That the decree of divorce was void, for want of
jurisdiction in the court granting it—citing *Scott* v. *Scott*,
6 Ohio, 236; *Clark* v. *Clark*, 10 New Hamp. 380; *Sher-
burne* v. *Sherburne*, 6 Greenl. 210; *Jarvis* v. *Jarvis*, 3
Edw. Ch. 462; *Greenlaw* v. *Greenlaw*, 12 New Hamp.
200; *Jones* v. *Jones*, 2 Overton, 2; *Forsyth* v. *Ripley*, 2 G.
Greene, 182; *Dash* v. *Van Bleeck*, 7 Johns. 477; *Sayre* v.
*Wisner*, 8 Wend. 661; *Fairbanks* v. *Wood*, 17 Ib. 329;
*Miller* v. *Whitaker*, 5 Hill, 408; *Calkins* v. *Calkins*, 3
Barb. 706; *Norris* v. *Slaughter*, 1 G. Greene, 338; *The
People* v. *Supervisors, &c.*, 10 Wend. 363; *Dickinson* v.
*Dickinson*, 3 Murphy, 327; *Givan* v. *Marr*, 27 Maine,
212; Bishop on Mar. & Div. 802; *Burdick* v. *Bloom*, 1
Hill, 130; *Webster* v. *Reid*, 11 How. 460; *Wright* v.
*Marsh*, 2 G. Greene, 104; *Thatcher* v. *Powell*, 6 Wheat.
119; *Young* v. *Lorain*, 11 Ill. 636; *McCoy* v. *Hyde*, 8
Cow. 68; *Denning* v. *Corwin*, 11 Wend. 647; *Gaddebock*
v. *Parks*, Leg. Inquis. Aug. 1851, 13; *Aikins* v. *Kinnan*,
20 Wend. 245; *Quailes* v. *Robinson*, 1 Chand. 31; *Car-
son* v. *Allen*, 2 Ib. 122; 1 Story's Eq. sec. 624; *Shepard*
v. *Shepard*, 5 Halst. 250.

2. That the decree might be impeached, for fraud—citing *De Louis* v. *Meek*, 2 G. Greene, 67; *Gallatian* v. *Irwin*, Hopk. 54; *Webster* v. *Reid*, 11 How. 442; *Jackson* v. *Jackson*, 1 Johns. 425; *Hitchcock* v. *Aiken*, 1 Caines, 460; *Bouden* v. *Fitch*, 15 Johns. 121; *Allen* v. *McLellan*, 2 Jones, 328; *Wright* v. *Wright*, 4 Halst. Ch. 153; *Gaines* v. *Gaines*, 9 B. Monr. 295; *Bury's Case*, Coke, 174; *Kenn's Case*, Coke, (Ab.) 225; *Dunn* v. *Dunn*, 4 Paige, 431; *Meadowcraft* v. *Hugenin*, 4 Moore, Eng. Ch. 386; *Perry* v. *Meadowcraft*, 10 Beav. Eng. Ch. 122; *Brownsword* v. *Edwards*, 2 Vesey, Sr. 245; *Green* v. *Green*, 2 Gray, 361; *Nelson* v. *Rockwell*, 14 Ill. 375; *Propst* v. *Meadows*, 13 Ill. 157; Story's Eq. Plead. sec. 426; Brown's Civil Law, 96; Bish. on Mar. & Div. sec. 706 to 708; Ib. sec. 99—107; 6 Pothier, 211.

WRIGHT, C. J.—This case was before us at the December term, 1856. An opinion was then delivered by a majority of the court, affirming the decree of the court below. The respondent, who is also appellant, filed her petition for a re-hearing, which has been granted; and I am now instructed to prepare an opinion, in which all the members of the court concur, reversing the decree below, and dismissing complainant's bill.

The first question, and one that, as now advised, we think disposes of the whole case, is, whether it was legitimate or permissible to render such a decree. The statute in force at the time the decree of divorce was rendered, provided that whenever a divorce was decreed from the bonds of matrimony, the guilty party should forfeit all rights acquired by virtue of such marriage. Act of 17th January, 1840, sec. 6. In this case, it was found that the wife, (the present complainant,) was the guilty party.

While mere names may, in most instances, be unimportant, and should not be allowed to affect substantial rights, yet, in this instance, we understand that what the complainant claims, and that to which she is entitled, if anything, is dower from the deceased husband's estate. This

is what it is styled in her bill, and it is this, or it can be nothing.   It cannot be alimony, for this is merged, necessarily, in the right of dower, so soon as the husband dies. To entitle the wife to this dower, there must be a marriage, seizin, and the death of the husband.   After marriage and seizin, the right is inchoate, and on his death, it becomes perfect, unless she has, voluntarily or otherwise, parted with, or forfeited the same.   To give her this right, the marriage or coverture must have continued until the time of his death; or, if not so continuing, her right will not be preserved, if the marriage was dissolved from her fault, he being the innocent party.   And where, as in this case, the sentence of divorce, which adjudges her guilty, and by virtue of which, she, by the law, forfeited all her rights acquired by the marriage, remains in full force, in no manner reversed or set aside, the wife, upon no fair or legitimate reasoning, can be entitled to dower.   The decree of divorce is as complete and absolute a bar to the relief prayed for, as would be her own voluntary conveyance, executed with all the formalities required by law.   The argument may be stated thus:  the sentence of divorce dissolved the bonds of matrimony, existing between the parties.   The petition was filed by him, and she was found to be the guilty party.   Being so found, she forfeited all rights acquired by virtue of her marriage.   If she stands adjudged guilty, and the forfeiture follows, then she cannot claim any right so forfeited, so long as that sentence dissolving the marriage remains.   And, therefore, we conclude, that where there is a decree of divorce from the bonds of matrimony, in favor of the husband, for the fault of the wife, of the pendency of the application for which she had personal service, she, after his death, is not entitled to dower, nor to a portion of his estate, by virtue of the former marital relation, so long as such sentence of divorce remains in force.   And more particularly is this true, when the husband has again married.

But it is urged, that the sentence of divorce does not continue in force, but is declared void in part, or so far as

to give the complainant the relief asked. This is true. But such a decree, we think, is both logically and legally inconsistent, and cannot be supported either upon principle or authority. This decree gives the complainant dower in the lands, and one-third of the personal estate, and at the same time, leaves so much of the sentence of divorce as dissolved the bonds of matrimony, in full force. It does not find that the coverture continued to the time of his death ; nor that its non-continuance was occasioned by any fault or guilt on his part ; and yet gives her dower to the same extent, and as fully, as if it did so continue. It, in effect, says, there may be dower, without the continuance of the matrimonial state.

But the legal, as well as logical, inconsistency of such a decree, may be best illustrated by the circumstances of this case. It gives complainant dower, and yet in effect recognizes the continuance of the second marriage to the time of the husband's death. We say, in effect, for this is doubtless what is particularly contemplated, by the clause which provides that the decree of divorce shall not be vacated as to other persons, or in any other respect. Under such a decree, what is respondent's situation? Is she entitled to dower? She certainly is, upon every known rule, for she was *the* wife at the husband's death, and still continues his widow, for aught that appears by this decree. Let us suppose, then, that she applies for dower, and it is granted, upon what basis is it to be given? Is she to have one-half or one-third of the remaining estate? And whether the one or the other, how are the rights of the children by the second marriage affected? How much of their estate is taken from them, by carving out of the whole, a dower interest for two widows? What consistency or reason is there in providing, that the sentence of divorce shall be vacated to give the complainant dower, but not so far as to affect third persons, or in any other respect, and yet in the same decree, strip such third persons of almost a moiety of their inheritance?

We cannot think that such a decree can be sustained.

If the sentence of divorce was void for fraud or duress, then it was void, not in part, but in all its parts, and should have been so declared. The effect thereof upon the second marriage, contracted before such sentence was set aside, or upon the children born of such second marriage, is not to be determined, nor is it material to enter upon that inquiry. But it is material, that the disability resulting from the divorce, should be removed, before complainant could assert a right, which, by that sentence, was forfeited. And without entering upon the inquiry, whether, by the law of this country, a woman can, in any case, have dower in the husband's estate, unless the coverture was continuing at the time of his death, we feel constrained to hold, that she cannot, if the cause of its non-continuance, is the result of her own fault or guilt, as found and settled by the decree of a court of competent jurisdiction; and certainly not, until the disability resulting from such a decree, is removed, and she substantially, and in fact, re-instated as the wife during his life, and the widow after his death. There cannot be two widows, lawfully entitled to dower, any more than there can be two wives, legally entitled to the support, care, protection and name of the husband. And, in this case, either complainant or respondent were entitled to the dower estate, to the exclusion of the other. Both could not be thus entitled. Bishop on Mar. & Div. sections 660, 1, 2, 3, 5, 6, 8, 9 and notes; *Given* v. *Man*, 27 Maine, 212; *McCafferty* v. *McCafferty*, 8 Blackf. 218; *Clark* v. *Clark*, 6 Watts & S. 85; 4 Kent, 53; *Starr* v. *Pease*, 8 Conn. 541; *Mattocks* v. *Stevens*, 9 Vermont, 326; *Green* v. *Green*, 2 Gray, 361.

The bill in this case, does not ask to set aside the decree of divorce entirely and for all purposes, but only to the extent already stated. We think this cannot be done, and beyond this, perhaps, we may not go. We remark, however, that in concluding, as a majority of the court did before, that such a decree might be rendered, they also with some hesitation, regarded the testimony sufficient to sustain the charge of fraud made in the bill. If, however, the decree

of divorce must be entirely vacated to let complainant in to the relief prayed for, we concur in saying, that the testimony is not sufficient to justify such a decree of vacation, even if it could be granted under the prayer of the bill. The testimony is very voluminous, and we shall not refer to it, but content ourselves with this statement of the conclusion arrived at, after fully considering all that it tends to prove. If the decree could legitimately act alone upon the property, and not upon the state and condition of third persons—if it were consistent to adjudge to complainant a portion of the estate, without vacating the decree dissolving the *vinculum* of her former marriage, and visiting upon the innocent wife of the second marriage and her offspring, the consequences of such vacation—we might more readily accept the conclusion contended for by the complainant from the proof made. Where, however, the decree must bring wretchedness and misery to the heart of respondent, and tend to bring reproach upon the children of such second marriage, it is but natural—it is but right—that the judicial mind should want more testimony, than if its effect was merely to take property from one, and give it to the other. Such strength of testimony, is not before us in this case.

The disposition of this question, covers the substance of the case. Other points of minor consequence, however require attention. It is urged that the petition for the divorce was not sworn to, and that the court rendering the decree had, therefore, no jurisdiction of the cause. This defect cannot be considered as vital. It was not a jurisdictional requisite in such a proceeding, and if not, it could not vitiate the action of the court for the purposes of the present inquiry. *Cooper* v. *Sunderland*, 3 Iowa, 114.

It is again urged, that the court had not jurisdiction of the cause of this divorce, inasmuch as the complainant's desertion took place before the passage of the act under which those proceedings took place, and the act, it is said, cannot have a retrospective operation. The desertion is alleged to have taken place in August, 1837. The act giv-

McCraney v. McCraney.

ing a right to a divorce for desertion of one year, and under which this divorce was granted, was passed January 17, 1840, and the petition for the divorce was not filed until in October, 1841. More than one year elapsed thereafter the passage of the law, before the bill was filed. When the cause called for by the statute, is a continuing one, although it may have begun before the enactment of the statute, yet, if it continued after the passage, the period required therein, this is sufficient, and the case comes within the act. In such a case, it is the future, and not the past act, which becomes the offence. *Clark* v. *Clark*, 10 N. H., 380; *Greenlaw* v. *Greenlaw*, 12 N. H., 200.

The decree of the district court is reversed, and bill dismissed.