CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## MARCH TERM, 1919.

---

McHenry v. State, ex rel. Rencher, District Attorney

[80 South. 763, Division B.]

1. COUNTIES. *Removal of supervisor. Residence. Evidence.*

Where, in proceedings to oust a supervisor from office the defendant testified positively that his domicile was within his district, and a state witness testified that he lived in another place, such testimony of the state witness, while competent under the circumstances of the case in last analysis, simply gave the conclusion of the witness upon a mixed question of law and fact and of itself alone was not sufficient to justify a verdict for the state.

2. COUNTIES. *Supervisor. Legal domicile.*

Under Constitution 1890, section 176, and Code of 1906, section 292 (Hemingway's Code, section 3664), providing that a member of the board of supervisors must be a resident freeholder of the district from which he is chosen and own real estate within the district, such member may while maintaining a home within his district have a temporary home in another place.

3. DOMICILE. *Domicile of husband. Right of wife to fix.*

A husband's domicile cannot be fixed by any election on the part of the wife.

4. COUNTIES. *Supervisor. Choice of domicile. Intent.*

Where a supervisor owned a home within his district where he conducted most of his business and claimed it as his legal domicile, the fact that his wife and children temporarily resided outside of his district did not preclude him from claiming such home as his legal domicile.

5. SAME.

In a proceeding to oust a member of the board of supervisors on the ground that his domicile was not in the district, the fact that he was introduced on one occasion as a resident of another place was not important.

(289),

119 Miss.—19.

6. DOMICILE. *Nature and elements.*
> A person's residence is the place of his domicile, or the place where his residence is fixed, without any present intention of removing therefrom.

7. SAME.
> Even where a party has two residences, that will be esteemed his domicile which he himself selects, or describes, or deems to be his home, or which appears to be the center of his affairs, or where he votes, or exercises the rights and duties of a citizen.

APPEAL from the circuit court of Noxubee county. HON. THOS. B. CARROLL, Judge.

Proceedings in *quo warranto* by the state on relation of G. J. Rancher, District Attorney, to remove Thomas McHenry from the office of Supervisor of District No. 2 in Noxubee County. From a judgment for the state, defendant appeals.

The facts are fully stated in the opinion of the court.

*Jacobson & Brooks, Baskin & Wilbourn* and *Strong & Bush,* for appellant.

*Green & Green, Chas. Richardson, G. J. Rencher* and *Frank Roberson,* Assistant Attorney-General, for appellee (state).

STEVENS, J., delivered the opinion of the court.

From the judgment of the circuit court of Noxubee county in *quo warranto* proceedings filed on information of the district attorney, ousting appellant from the office of supervisor of district No. 2 in said county, this appeal is prosecuted, Appellant, McHenry, was elected a member of the board of supervisors at the general November, 1915, election, and qualified and continued to discharge the duties of the office from January 1, 1916, to the date of the judgment appealed from.

The petition avers that McHenry was not a resident of district No. 2 of Noxubee county, but that on the 2d day of November, 1915, prior thereto and ever since, the said McHenry is a resident of the city of Macon, and that he is disqualified on that account to hold the office of supervisor for the second supervisor's district of

Noxubee county. Upon issue joined the cause was tried to the court and jury, verdict was rendered by the jury in favor of the state, and judgment was duly entered, removing appellant from his said office. Section 176 of the Constitution provides:

"No person shall be a member of the board of supervisors who is not a resident freeholder in the district for which he is chosen. The value of real estate necessary to be owned to qualify persons in the several counties to be members of said board shall be fixed by law."

Section 292, Code of 1906 (section 3664, Hemingway's Code), is as follows:

"A person shall not be a member of the board of supervisors who is not a resident freeholder in the district for which he is chosen, and the owner of real estate of the value of three hundred dollars."

No point was made in the trial court on the provision of the law requiring a supervisor to be a freeholder and there is no contention that appellant did not own real estate in excess of the value provided by statute. The sole ground for removal is the averment that McHenry was not a resident of district No. 2, but was a resident of the city of Macon, which the proof shows to be in district No. 3 of Noxubee county. When all proof was in, appellant moved the court for a peremptory instruction. This motion was overruled. Many instructions were gven, both for the state and the defendant, in the trial of the case, and the accuracy of various instructions given the state is challenged by an appropriate assignment of errors. The main ground relied upon is the refusal of the court to grant appellant a peremptory instruction. The conclusion which the court has reached, after most elaborate arguments and a carefull consideration of the cause makes it unnecessary to copy in full the several instructions which are assigned as error, and renders the questions argued on these instructions purely academic. We accordingly go at

once to the heart of this case, and in doing so it becomes necessary to determine whether the verdict of the jury is supported by competent and satisfactory testimony.

The alleged conflicts in the testimony will be adverted to later. We will state first what we consider the prominent and proven facts of the case. Thomas McHenry was born and reared at Ridgeway, the old country plantation situated in district No. 2 of Noxubee county. His old home place was known as Ridgeway, and the post office as Paulette. While a young man he joined the church at Ridgeway, and on reaching his majority registered and voted in district No. 2, and continued to exercise his rights of franchise in district No. 2 until about 1905, when appellant moved with his wife and children to Clarksdale, Miss., where they resided for some years. In 1902 appellant temporarily moved to Kemper county on a plantation known as Fox Trap, and resided in Fox Trap from 1902 to 1905. It appears that while he was in Kemper county appellant retained his citizenship and exercised his right to vote in district No. 2 of Noxubee county. In 1911 appellant returned from Clarksdale to Ridgeway, the place of his birth, and there established a home with his wife and children, and there resumed the duties of citizenship. He then registered and voted in district No. 2, increased his real estate holdings, managed a large plantation, a ginning business, and had unquestionably for several years no other residence, actual or legal, until about the time he became a candidate for the office of supervisor. It appears that McHenry was the owner of about six thousand acres of land, and farmed extensively. His country home was comfortably and well equipped, and sometimes referred to as ''Ridgeway House.'' In 1915 appellant was road commissioner for his district under appointment of the board of supervisors, and it appears that he maintained much interest in good roads; that he was instrumental in having es-

tablished a consolidated school in his district; and we are justified in saying he was attached to and had some pride in the community of his birth. In 1915 he became a candidate for supervisor, won the nomination in the primary election over one or more candidates, and was thereafter duly elected in the regular or general election in November. At Ridgeway his family consisted of his wife and three children, but prior to the election and apparently some time in 1913 Mrs. McHenry and the children went to Macon to live with and keep house for a Mr. Wade, an uncle of Mrs. McHenry, and at the time the petition in this cause was filed the wife and children were still residing in the home of Mr. Wade in Macon. Mr. McHenry testified that Mr. Wade lost his wife, was growing old and in bad health, and desired the presence, help, and companionship of his favorite niece. It does appear that Mr. Wade offered inducements in the way of a comfortable and well equipped home in the city of Macon, where the children could attend the Macon school. In removing to Mr. Wade's home Mrs. McHenry carried with her some of her household goods and furnishings, but there was retained in the country home much furniture and furnishings, and the country home remained open and continued to be equipped as a comfortable dwelling house. In other words, the Ridgeway home was not abandoned, nor was it stripped of its furniture, but was left with two furnished bedrooms, a sitting room, hall, dining room, and kitchen. Appellant employed a cook, and, except for the time appellant's foreman occupied a portion of the Ridgeway house, the cook appears to have had supervision of the premises, and there prepared meals for appellant and any guests which he might happen to take, and which he at times dd invite, to his country home. Appellant at times spent the night at Ridgeway, and, according to his testimony, spent approximately three fourths of his tme there. There can be no doubt about the fact that

he did maintain a gin for the ginning of his own cotton, and also operated it for the public generally, and that during the ginning season he was at Ridgeway practically all of his time, supervising the operation of his gin and the gathering of his crops. At other seasons of the year appellant made frequent visits to Ridgeway, both on business and on pleasure. Sometimes he would invite guests for purposes of fishing and hunting. On one occasion a Thanksgiving dinner was served, and, one or two occasions are in evidence, when guests not only took meals, but spent the night with McHenry at his country home. The proof shows further that Mrs. McHenry and the children occasionally visited Ridgeway and spent the week-ends, and in the summer the family would spend some time preserving fruits and making use of the premises generally. Appellant always claimed to hold, and has attempted to hold, his citizenship at Ridgeway, where he registered, voted, gave in his tax list, served as road commissioner, became a candidate for supervisor, and where he was elected to the office from which he has now been ousted. There is no evidence that he has any business except in district No. 2, and he does not own a dwelling house anywhere else. He claims Ridgeway as his permanent residence, his real home. The distance from Macon to Ridgeway is approximately twelve miles, and the evidence discloses that appellant goes into Macon at night in an automobile, and frequently spends the night with his family, returning to his business in the early mornings. He has a post office box in Macon, where he receives such mail as is addressed to him at Macon, but much of his mail is addressed to him at Paulette post office, and such mail as is properly addressed to Paulette is received by appellant at his country home. Appellant is positive in his testimony that, Ridgeway is his permanent abiding place, and that he has not claimed any other place as his home. The facts thus

far stated we believe are established by the overwhelming testimony in the case.

The cause was submitted to the jury, however, upon the theory that there is conflict in the testimony, and it is insisted on this appeal that the verdict of the jury is justified by competent testimony and should not be overturned. This phase of the controversy justifies and has received careful thought. We now notice some of the testimony which it is claimed raises an issue of fact. Mr. Sherrod, Mr. Ormsby, and others, while testifying for the state, were asked questions of the following nature:

"Q. Where does Mr. McHenry live now, Mr. Sherrod? A. In Macon, Miss.

"Q. He lives in Macon, Miss.? A. Yes, sir,

"Q. Where is Mr. McHenry's residence at this time? A. Macon, Miss."

This testimony, while competent under the circumstances and the nature of this case, in its last analysis simply gave the conclusion of the witness upon a mixed question of law and fact. If these witnesses are to be permitted to state where the legal residence of McHenry is, then they would be permitted to dictate the verdict of the jury and the judgment of the court. At best, this testimony was subject to explanation, and must be weighed in connection with all the evidence in the case. It was entirely proper to ask the witnesses where McHenry maintained a home or domestic establishment, and to elicit the details as to where he ate and slept and where his family resided. But the testimony as a whole shows the true situation. There was no dispute by appellant that his wife and children were temporarily residing in the home of their uncle in Macon, or that McHenry there spent a large part of his time and there slept at nights.

It is insisted by counsel for appellee, that our Constitution requires actual residence within a district as a qualification for the office of supervisor, and that

there is at least a dispute in the testimony as to the actual residence. The constitutional provision should not be interpreted so literally. The chief aim of our constitutional provision is to require a supervisor to be a freeholder. The object is to elevate the office, and, by enacting ownership of property as a qualification, to place the commission in the hands of a frugal and intelligent person, identified with the best interests of his district. He must be a resident freeholder, and must own real estate at least to the value of three hundred dollars. Here McHenry owns six thousand acres of land and perhaps the best-managed plantation in the district. As to residence, he was serving the district in which he was born and reared, and in which, except for the period of time he was at Clarksdale, he always claimed his permanent home. The prominent facts support instead of contradict his claim of citizenship and home. He asserts that the removal of his family to Macon was temporary, and prompted by the circumstances that his uncle's wife had died and Mrs. McHenry desired to keep house for her aged uncle. There is some testimony that Mrs. McHenry preferred to live in a city. Assuming there is dispute as to the declaration and wishes of the wife, we cannot subscribe to the holding that the husband's domicile can be fixed by any election on the part of the wife. The fact that the wife and children actually reside in Macon may be a circumstance, and competent to be shown in evidence as indicating McHenry's intentions, but it is certainly a circumstance that can be explained. Otherwise, physical location of the family at any place, however temporary, would throw the issue as to the permanent home or legal residence in hopeless confusion. It is conceded that a man may have more than one place of residence, and, under the experiences and environment of present-day methods and society, one frequently abides in more than one place in the course of a year. Traveling men and other agents are sent from their homes over a

broad commercial field. Many are called upon to leave their permanent abode by the exigencies of business, the search for pleasure and education. It is frequently said that a man can have but one domicile or legal residence, and it is there where he assumes the burdens, and exercises the privileges, of citizenship. This place for Thomas McHenry was Ridgeway, within the district for which he was elected; and this legal residence we hold is the residence contemplated by our Constitution and statute. It is not a question of physical location, but of legal location. This does not mean that the claimant may establish a home at one place and merely claim to live at another. His claims must certainly be in good faith and laid upon a firm foundation. The married man must indeed have a "home, sweet home," around which untimately cluster all the beautiful sentiments of home In the present case McHenry actually had a domestic establishment where he could eat and sleep, rest and abide. There his cook always was well equipped to serve, and actually did serve, meals. He had sleeping quarters, in fact a comfortable dwelling home. There he had servants in and about the farm and premises, live stock, even a pet bear and pea fowl. The essential showing as to a home is without material dispute. There was present the intention to return his family and children to this country home and continue to make it the permanent dwelling place.

As to the intentions of appellant there is no material dispute. There was an attempt to contradict his declarations, first by the witness Sherrod, who says he introduced McHenry in Memphis, Tenn., as being from Macon. He says, "I introduced him as Mr. Thomas McHenry of Macon, Miss.," and it is said that appellant did not then and there deny the accuracy of this introduction. We attach little importance to such an occurrence, especially in view of the fact that Macon is the county site and the railroad point from which any one at Ridgeway would embark for Memphis.

It is then attempted to contradict appellant's intentions by the witness Ormsby, who in testifying said, "He (appellant) told me that he had moved." This statement of the witness was delivered on direct examination, but upon cross-examination witness could not name the time or place such statement had been made, or to say who was present. Under such circumstances the statement had little probative value. It was impossible for appellant to contradict the witness except by the most general denial that any such statement had been made. We here observe that all of the material witnesses who testified for the state in this case frankly admitted that they were after removing McHenry from office for business reasons, contending even upon the witness stand that McHenry as a member of the board of supervisors had raised their assessments to an unreasonable extent, and, as one witness put it, was "extravagent generally." It appears that the board of supervisors had occasion to raise the assessments for taxation, and furthermore that McHenry was an advocate of good roads and a consolidated school. Some of the witnesses who testified for the state opposed McHenry in the election. The first controversy was over the Democratic nomination for the office when McHenry's rights were challenged before the county executive committee. After appellant was inducted into office and had served for over two years, a coterie of citizens determined to oust him, and to this purpose employed private counsel, and attempted to furnish the necessary proof. While these citizens deny any personal ill will, they frankly state "they are after McHenry," and that they are going to continue their pursuit. They were admittedly determined to get rid of him as an officer. Enveloped in this atmosphere, the statements of the witness Ormsby that appellant said he had removed should certainly not be given undue prominence in the case and made the only thread upon which the state's case may hang. Even if the statement

was made, appellant did not state the character of the removal, whether it was temporary or permanent. This bit of testimony is strikingly similar to that relied upon in *Klutts* v. *Jones*, 21 N. M. 720, 158 Pac. 490, L. R. A. 1917A, 291, where in answer to an inquiry, Miss Culberson, whose real home was there the subject of inquiry, said, "I am going home." She had purchased a ticket for Portales, and, relying upon this statement, it was attempted to show that Portales was her real residence. The court attached little importance to the statement of the party in that case, because of the fact that the young lady was making a visit to her father and mother. The court said, "This proves nothing." It is significant that in the great mass of testimony in this case this testimony of the witness Ormsby that appellant stated to him he had removed is the only statement in the record in conflict with the statement and declared intentions of McHenry that he had not removed from Ridgeway permanently, but intended to return his wife and children to the country home.

Our court, in *Hairston* v. *Hairston*, 27 Miss. 704, 61 Am. Dec. 530, gave an elaborate and satisfactory discussion of residence, and stated clearly the general principles applicable in a case of this kind. It was there stated:

"In all cases, the question whether a person has or has not acquired a domicile must depend mainly upon his actual or presumed intention. . . . That a person being at a place is *prima-facie* evidence that he is domiciled there, but it may be explained, and the presumption rebutted. The place where a man carries on his business or professional occupation, and has a home or permanent residence, is his domicile; and he has all the privileges, and is bound by all the duties, flowing therefrom."

Our court in the Hairston Case quotes with approval from Judge Story, Confl. of Laws, p. 45, section 47:

"That even where a party has two residences at different seasons of the year, 'that will be esteemed his domicile which he himself selects, or describes, or deems to be his home, or which appears to be the center of his affairs, or where he votes or exercises the rights and dutes of a citizen.'"

The court also declared in that case that, although the wife did not follow the husband from Virginia to Mississippi, but remained in Virginia, "her legal domicile was that of her husband at the time of his death." And so we say in the present case, if appellant insisted upon removing to or staying at Ridgeway, that will be his domicile, even though Mrs. McHenry should become so enamored with the conveniences of city life as to decline to live again in the country. This time-honored principle of law has not been repealed even by the emancipation of woman and the adoption of woman suffrage. Judge Cooley states:

"A person's residence is the place of his domicile, or the place where his residence is fixed, without any present intention of removing therefrom." Cooley's Constitutional Limitations (5th Ed.), 6754.

In *Gilmore* v. *Brown et al.,* 93 Miss. 63, 46 So. 840, our court, in applying the exemption law, held on facts not so strong as the facts of the present case that the country homestead of Mr. Brown had never been abandoned, even though the homesteader had moved to the village of Lafayette Springs, and became a qualified voter of the city, and was elected to and held the office of alderman. In the present case McHenry was a qualified elector in supervisor's district No. 2, and could not have voted or held the office of supervisor anywhere else. The fact that he registered and voted in that district shows the good faith of his claims and sheds light upon his intentions.

It is generally held that removal of an officer temporarily to the place where his official duties are to be discharged does not affect his citizenship or change his

domicile. In the case at bar McHenry did not move to a place where it would be impossible to discharge the duties of supervisor, but, on the contrary, conceding that he had moved at all, was in Macon, the county site, where the regular meetings of the board are held.

A case in strict harmony with the views we entertain is. that of *Caufield* v. *Cravens,* 138 La. 283, 70 So. 226, and the facts likewise are similar. The court was called upon to construe a provision of the Louisiana Constitution which employed the term "actual *bona-fide* resident." And the court in a clear opinion by the Chief Justice held that the provision there under review did not require one to remain continuously in a town or upon the premises of a residence, and that temporary absence brought about by a consideration of business, duty, health, or pleasure would not forfeit citizenship. The case of *Hairston* v. *Hairston, supra,* was referred to and again approved by this court in *Still* v. *Corporation of Woodville,* 38 Miss. 646, and the. principles stated in the Hairston Case reaffirmed. We do not intend to say that the word "resident" may not have a different meaning according to the context and particular statute in which the word is used. Our duty is to interpret the sense in which it is here used by the framers of our Constitution and by the legislature in carrying the constitutional provision into effect and in prescribing the amount of real estate which a supervisor must own. We are dealing with a qualification for office, a question more or less political. No one seems to have challenged McHenry's right to register and vote in district No. 2, with the one exception that his opponent in the Democratic primary called in question the legality of his nomination; and surely if McHenry is qualified to vote and the election commissioners have continued to carry his name on the poll books at Paulette, he is qualified to hold office. It would be utterly inconsistent to say that McHenry has the right to vote at Paulette, but not to hold office there.

On the whole evidence appellant was entitled to a peremptory instruction. The judgment of ouster is accordingly reversed, and the petition dismissed.

*Reversed and dismissed.*