## HALL *v*. HALL.

(In Banc. Jan. 14, 1946.)

[24 So. (2d) 347. No. 35968.]

John T. Smith and W. D. Jones, both of Cleveland, and Hall & Hall, of Columbia, for appellant.

Hugh **F**. **Causey**, of Cleveland, for appellee.

482

484

**Alexander, J.,** delivered the opinion of the court.

Mrs. Hall filed her bill to set aside a decree of divorce granted to her husband, appellant, in Nevada, and for an allowance for support and maintenance. Dr. Hall made his answer a cross-bill, and prayed in the alternative for divorce. From a decree annulling the Nevada decree, denying divorce here, and awarding support, Dr. Hall appeals.

The testimony is voluminous and insofar as the denial of divorce upon the cross-bill is involved, we find no warrant to displace the judgment of the learned chancellor upon the factual issue.

The jurisdiction of the Nevada court was dependent upon the fact of actual bona fide domicil in that state by Dr. Hall. If such residence in that state was not with a bona fide intent to establish domicil animo manendi, the decree of that court was rendered without jurisdiction and was not entitled to full faith and credit by our courts. Williams v. North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366; Miller v. Miller, 173 Miss. 44, 159 So. 112. It is necessary therefore to examine the testimony upon this crucial point to test the judgment of the chancellor who decided that such domicil had not been established. Jurisdiction of the foreign court is always an open issue and must affirmatively appear. Woodville v. Pizzati, 119 Miss. 442, 81 So. 127; McAdams v. McFerron, 180 Miss. 644, 178 So. 333;

Steele v. Steele, 152 Miss. 365, 118 So. 721; Williams v. North Carolina, supra; Navarrette v. Joseph Laughlin, Inc., (La. App.), 20 So. (2d) 313.

As stated, the evidence as to the widening breach between the parties, relevant upon the issue of the divorce sought here by Dr. Hall, need not be delineated, except insofar as it throws light upon his purposes in seeking domicil in Nevada. It is enough that the filaments of mutual affection which through the preceding years had united them, and which had been energized by the currents of mutual trust, had by constant friction been stripped of that protective and decorative insulation by which devotion insures against the constant threat of destructive short circuits through other contacts, and remained mere fetters of legal bondage. It is true that appellee discredited the allegation that such attitude was mutual.

The parties were married in 1932. Appellant was at the time of this action a successful practicing physician and surgeon at Shelby, Mississippi, where the parties had resided for about eight years, and where he conducted a clinic and hospital in the name of the Hall Hospital Association. There are two children, a boy now in his seventh year and a girl in her third year. Appellant left Shelby May 28, 1944, and went by automobile to Reno, Nevada; arriving the morning of May 31st. He carried with him a substantial amount of personal effects, sports equipment, and the sum of approximately $350. Shortly after his arrival, he sent for some surgical instruments and devices, chiefly diagnostic aids. He stated to his wife that he "was going out there looking for a new location, and I was thinking over the matter of getting a divorce." He denied that divorce was the sole motive, but that he was interested in improving his health and sought a vacation. Other witnesses quoted him as explaining that he was run down physically and overworked and "was planning to leave Shelby to go somewhere else," and that upon his return he appeared much

improved. About two weeks before he left for Reno, he had consulted his local attorney regarding lawyers in Reno who could handle the divorce matter and whom he sought and consulted the second day after his arrival. He procured a room at a local hotel and later in a rooming house. The Nevada law, Comp. Laws, sec. 9460, requires a six weeks' physical presence in the county, with an intention to establish permanent residence. The suit for divorce was filed promptly upon the expiration of the required time, and the decree was granted on August 29, 1944. He immediately returned to Shelby, after having shipped back his surgical accessories, some duplicates of which he left with a medical acquaintance in Reno. He testified that he left some funds on bank deposit in Reno and had made arrangements for living quarters there. While residing in Nevada, ending the divorce hearing, he took and passed the medical examination prerequisite to practicing medicine in that state and procured a license. He did in fact engage in practice and "formed an association" with a local doctor, the exact nature of which is not disclosed, but according to his testimony and that of his proposed associate he expected to perfect it formally. However, the arrangement had the informality of a mere "gentleman's agreement." Other physicians confirmed the fact of a proposed clinic of which Dr. Hall was expected to avail. One of such witnesses, allegedly a participant in such plans stated: "The use of the word 'clinic' does not exactly describe our plans, as my association with Dr. Clarke and Dr. Hall in August of 1944 was one of considering joint occupation of medical quarters, but there was not contemplated on my part any joint action in this venture."

Dr. Hall testified as to his favorable impression of Nevada as a place of residence and its professional possibilities, and as to his purpose to return after he had finished adjusting his affairs in Mississippi. Upon his return to Shelby September 2, 1944, he resumed his practice there although he testified that such services were

rendered without deterioration of his purpose to return to Nevada; that he would have returned to that state earlier but for the injunction of a writ ne exeat issued at the appellee's instance. There were other circumstances consistent with his alleged intention to return to Reno.

The testimony tending to refute a bona fide intention to establish a permanent domicil deals chiefly with the deplorable estrangement which had dominated his thoughts for the previous months during which the flag of their conjugal union had flown at half-mast. Appellee contends that these circumstances had created a dominating purpose to sever the marital ties and had contributed also to a depressed physical and mental state, whose alleviation was one of the purposes of his sojourn in the west; that he had vigorously asserted that reconciliation was impossible; that the purpose to procure a divorce under the liberal provisions of the Nevada law were not a mere afterthought; that the occupations with which he busied himself in Reno were incidental; and that his selection of that site was more than a mere coincidence. Some point is made of the language used by him in his testimony that a certain location was about seven miles from ''home,'' meaning Shelby. We need not pause to appraise this incident whose significance would vary according to whether it was deliberate or inadvertent. Appellant cites Klutts v. Jones, 21 N. M. 720, 158 P. 490, L. R. A. 1917A, 291, and McHenry v. State, 119 Miss. 289, 80 So. 763, and appellee counters with the argument that this was a betrayal of a persisting attitude toward his former residence.

The purpose to obtain a divorce does not of course forbid, nor is it inconsistent with, an intention to remain in the foreign state permanently after the decree. On the contrary, such intention is a prerequisite thereto. The learned chancellor, however, may have doubted that the population of what is referred to as the ''divorce capital of the United States'' has been built up to its substantial

size by the influx of those who had adhered meticulously
to the intentions avowed in their divorce actions. In
this connection Commonwealth v. Esenwein, 348 Pa. 455,
35 A. (2d) 335, is in point. This case involved a Reno
divorce and the testimony followed the streamlined pat-
tern of leading questions in the instant case and that
found in the record in Williams v. North Carolina, supra.
See 58 Harvard L. Rev. at page 945, Note 36. The Court
said [348 Pa. 455, 35 A. (2d) 336]: "He gave that
testimony on September 8th, received the decree on the
same day and left Nevada immediately. His acts spoke
louder than his words. If his testimony that on Sep-
tember 8th he had the 'intention' of residing in Nevada
had been supplemented by the fact that he would leave
the state immediately afterward, the court would have
been justified in declining to make a finding that his
Nevada domicil was bona fide. The court might very
well have said, had it known the additional fact, that
while the six-weeks' residence required by the Nevada
statute was established, his intention to leave immedi-
ately afterward prevented a finding that his domicil was
in good faith." In the affirmance of the case by the Su-
preme Court (325 U. S. 279, 65 S. Ct. 1118, 1119, 89 L. Ed.
1608, 157 A. L. R. 1396) on the same day Williams v:
North Carolina, supra, was decided, the finding of no
residence animo manendi was upheld, the Court stating
that the state court "found that on the entire showing
there was convincing countervailing evidence to disprove
petitioner's intention to establish a domicil in Nevada,"
and declares that the Pennsylvania "courts were war-
ranted in finding that the respondent sustained her bur-
den of impeaching the foundation of the Nevada decree
on the jurisdictional prerequisite of bona fide domicil."
Compare Miller v. Miller, supra.

Both the parties here are people of refinement and cul-
ture and justifiably prominent in their spheres of ac-
tivity and service. No doubt the learned chancellor, by
discounting the weight of the subjective testimony of

appellant, stopped short of an impeachment of his integrity but found in the attendant circumstances, colored by the background of a continuing incompatibility wherein constant irritation denied healing to bruised sensibilities, sufficient impairment of a resolute purpose to adopt Reno as his permanent home. Such a purpose must precede the divorce hearing and must be dominant. An intent to acquire permanent residence so as to qualify one for divorce proceedings may well be belied by making the latter predominant. Accent is shifted from that which is the means to that which constitutes the end. In this connection, it is not inappropriate to say that while the Nevada courts hold that there must be a present intention to remain, if not permanently, at least for an indefinite period (Latterner v. Latterner, 51 Nev. 285, 274 P. 194), they likewise view with indulgence the evidences of such intent, but cannot impose its standards upon the courts of the state in which the contract of marriage was made, and to which it remains always an interested and solicitous party. Its right and duty is to protect its citizens and their contract by demanding compliance with its own criteria. The extent to which this involves a supervisory and corrective control over the courts of the foreign state is still debatable but not so its right and duty to adjudge its own recognition thereof. Miller v. Miller, supra. This aspect of the problem provoked forceful comment by the several members of the Court in the Williams case, supra. See 58 Harvard Law Rev., 930, 937, for an able discussion of the phase and of the history and effect of the case just cited, also similar discussion in 15 Miss. L. J. 165.

The testimony for appellee on this point was, it is true, chiefly negative in character and involved construction of the appellant's acts prior to, during, and after the trip to Reno, throwing light upon the appellant's intent and purpose. Necessarily the appellant's testimony is largely subjective and the issue is one of conflict between words and action. A concession that appellant's evidence

furnished plausible support for his defense against complainant's bill does not require us to set aside the decision of the chancellor whose initial responsibility in this matter was profound and discharged in a manner and with a result that we feel unauthorized to disapprove. The briefs of counsel are models of research and arrangement and thoroughly canvass this important problem. We have selected for citation only those leading cases whose modern views compel our accord, and which reveal facts and conclusions entirely consistent herewith.

This disposes of the appeal, yet we notice briefly some other assignments of error. The witness, Dr. Gazelle, was not allowed to testify that Dr. Hall had told him shortly before the trip to Reno that he intended to seek a new location for the practice of medicine. We do not agree that this is inadmissible as self-serving. Yet, other witnesses had been allowed to testify to the same effect, and all such statements were but a projection of Dr. Hall's own expressions which he was of course permitted to make. We do not feel that the exclusion of this bit of cumulative testimony, being merely repetition of the appellant's own language, was reversible error.

The contention that the final decree did not find as a fact that appellant had not established a recognized domicil in Nevada may not be upheld. The entire attack, stated in the complainant's bill, and elaborated in the testimony, was directed to the absence of jurisdiction as justifying refusal to accord full faith and credit to the foreign decree. The final decree of necessity so held, and its basis is disclosed by its specific finding that the Nevada decree was not to be given such recognition. Other assignments referring to the exclusion or admission of testimony upon the issue raised by the cross-bill have been examined and found inadequate to reversal.

The final assignment involves the award to complainant of separate maintenance and counsel fees. The latter are not made subject of comment by appellant. The former award includes a monthly support for appellee

and her two children of $250 per month, and the payment of taxes upon the home occupied by appellee to whom possession is decreed. Appellant was shown to be worth between $15,000 and $18,000, with a net annual income of from $5,000 to $6,000. These figures are used by both parties as bases for their respective contentions. In this connection, however, appellant testified that his gross personal income from the hospital and his services for the year 1943 was $9,808.23, and for the year 1944, approximately $10,000. During the latter year, if not prior years, his household expenses were charged to the personal or hospital account and taken into account in computing his net personal income. It is insisted that the burden of carrying substantial life insurance was not adequately taken into consideration, and Gresham v. Gresham, 198 Miss. 43, 21 So. (2d) 414, is cited as furnishing a gauge. It is of course impossible to standardize factual patterns in such cases. We do not find the award compels correction, especially since it remains subject to the court's revision.

Affirmed.