RUTH E. HOBSON, Appellee, v. DEMPSEY CONSTRUCTION COMPANY et al., Appellees; MELLIE HOBSON, Intervener, Appellant.

No. 46218.

FEBRUARY 16, 1943.

Healey & Reynolds, of Creston, for appellant.

Geo. F. Allen and Thos. E. Mullin, of Creston, for Ruth E. Hobson, and Gamble, Read, Howland & Rosenfield, of Des Moines, for Dempsey Construction Company and Standard Accident Insurance Company, appellees.

OLIVER, J.—Frank A. Hobson and Ruth E. Hobson were married in 1938, and lived together as husband and wife until May 8, 1941, when the husband was killed in an accident arising out of and in the course of his employment. July 24, 1941, Ruth Hobson filed with the industrial commissioner application for arbitration against the employer and its insurance carrier.

Appellant, Mellie Hobson, was Frank Hobson's mother. She intervened in said proceedings alleging Ruth Hobson was

not Frank's surviving spouse and praying that the workmen's compensation be awarded to appellant. The employer admitted the death was compensable and the only issue upon appeal is between appellant and Ruth Hobson. For convenience the latter will be referred to as appellee.

Appellant pleaded that appellee had married one Thomas Miller and, in 1935, had commenced divorce proceedings against him in Ohio but that no decree of divorce was entered until June 10, 1941, when there was a nunc pro tunc entry, and that by reason of said circumstances appellee and decedent were never legally married.

The material facts are not in dispute. In 1935, appellee, who had been domiciled in Ohio for some years, instituted in the Court of Common Pleas of Knox County, Ohio, an action for divorce from Thomas Miller. He was personally served with summons in Ohio, March 15, 1935. May 9, 1935, said cause was heard and the trial judge made the following entry in the civil docket:

"Orders of Court

"May 9, 1935, Plaintiff decreed divorce from the defendant for gross neglect of duty of defendant. * * *."

This entry was not journalized at said time. On June 10, 1941, a nunc pro tunc entry for divorce was signed by the judge and filed and recorded, stating in part:

"It appearing to the court that heretofore, on the 9th day of May, 1935, a decree of divorce was entered herein, * * * .

"And it appearing to the court that said order was duly made by this court on said date, at the April term 1935, but that the same was through inadvertence not entered at said time, the court now orders that the following order and decree be entered by the clerk of this court upon the journal of this court as of the date of May 9th, 1935, and April term of said court."

After reciting jurisdictional fact findings of the appearance of plaintiff, the default of defendant upon due service, and the bona fide residence of plaintiff in said county for one year, the decree recites a finding that, upon the evidence adduced, plaintiff is entitled to a divorce, and orders and adjudges the divorce.

I. This is a collateral attack upon appellee's decree of divorce from Miller. The decree is regular upon its face. There is no charge that it was procured by fraud. To avoid it appellant must show it was void for .want of jurisdiction of the Ohio court to grant it.

In Richardson v. King, 157 Iowa 287, 298, 135 N. W. 640, 645, heirs of a decedent brought suit against his widow to set aside her decree of divorce from a former husband and to bar her from sharing in decedent's estate. The court stated this was a collateral attack upon the divorce decree; that plaintiffs were neither parties nor privies thereto and claimed nothing through either of the parties to the divorce proceedings:

"They are seeking to avoid a decree of divorce in order to make the marriage of their deceased father unlawful, and thus deprive the defendant, to whom their father was married, of any share of his estate. In order to do this, they must show that the divorce decree, which is fair on its face, was and is absolutely void because the court which granted it had no jurisdiction. * * * Courts very properly manifest great reluctance in setting aside decrees of the divorce after a second marriage has taken place, and will not do so save upon the most satisfactory showing."

See 27 C. J. S., Divorce, 1300, section 335; 17 Am. Jur. 390, 558.

II. Article IV, section 1 of the Constitution of the United States, provides, in part:

"Full Faith and Credit shall be given in each State to the * * * judicial Proceedings of every other State."

The Act of Congress of May 26, 1790, chapter XI, 28 U. S. C. 2585, section 687, 28 U. .S. C. A. 456, section 687, provides that judgments "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken."

A judgment or decree of divorce of a state court has the same credit, validity, and effect in every other court in the United States which it has in the state where it was pronounced, and whatever pleas would be good to a suit thereon in such

state, and none others, may be pleaded in any other court in the United States. The Federal Constitution and statute require that *not some but full* faith and credit be given judgments of a state court. Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 189.

That decision overrules Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, which held the full-faith-and-credit clause did not apply to a default decree of divorce entered in a state other than that of the matrimonial domicile, where no personal jurisdiction had been acquired over the defendant therein. But even when the rule of the Haddock case was the law, it was the holding in Iowa that, although the full-faith-and-credit clause did not compel the courts of this state to recognize the validity thereof, such decree, as a matter of reciprocal comity between the states, would be recognized as valid, in the absence of fraud in obtaining it. Miller v. Miller, 200 Iowa 1193, 206 N. W. 262; Freet v. Holdorf, 205 Iowa 1081, 216 N. W. 619.

The validity and effective date of appellee's divorce decree are governed by the law of Ohio.

■ III. Amazon Rubber Co. v. Morewood Realty Holding Co., 109 Ohio St. 291, 142 N. E. 363, holds a judgment may become effective between the parties before it is spread upon the journal.

In re Ackermann, 6 Cir., Ohio, 82 F. 2d 971, 973, states:

''Under Ohio law all judgments and orders must be entered upon the journal of the court and specify clearly the relief granted (section 11604, G. C.). Such entry may be compelled. Smith v. Smith, 103 Ohio St. 391, 395, 133 N. E.' 792. This does not mean, however, that until journal entry is made there is not for any purpose a judgment. 'Although a judgment which has been spread upon the journal is complete, judgments are good before the complete record is made. Its entry on the journal by the clerk is not an essential element of the rendition of the judgment; the entry on the journal it is declared, merely evidences the judgment.' 23 Ohio Jur. 615. As is said in Freeman on Judgments, §38, 'A judgment is not what is entered but what was directed by the court, or it may be neglected al-

together. * * * In the very nature of things, the act must be perfect before its history can be so; and the imperfection or neglect of its history fails to modify or obliterate the act.' "

Nauman v. Nauman, 26 Ohio C. C. 37, holds a decree of divorce becomes operative between the parties at its rendition, although merely noted on the appearance docket.

The nunc pro tunc entry for divorce did not change, modify, or correct a judgment, but merely made the record speak the truth by recording the judicial action previously and actually taken. Ohio courts, in common with courts of other jurisdictions, recognize their inherent common-law power to make entries nunc pro tunc to record judicial action previously and actually taken. This power is not dependent for its existence upon any statute and is not limited by Ohio statutes relating to proceedings to vacate or modify judgments. Although the Ohio trial court has no power to alter its conclusion subsequent to the term of the original entry, there is no limitation of time for nunc pro tunc entries to record judicial action actually taken. Certain nunc pro tunc entries may be made upon the court's own motion. National Life Ins. Co. v. Kohn, 133 Ohio St. 111, 11 N. E. 2d 1020; Herman v. Ohio Finance Co., 66 Ohio App. 164, 32 N. E. 2d 28; Helle v. Public Utilities Comm., 118 Ohio St. 434, 161 N. E. 282; Heacock v. Byers, 120 Ohio St. 621, 169 N. E. 295; Tresemer v. Gugle, 70 Ohio App. 409, 42 N. E. 2d 712.

Smith v. Smith, 103 Ohio St. 391, 133 N. E. 792, holds that the entry upon the journal of a divorce decree which has been announced by the trial court may be compelled, and states that, in furtherance of justice, an order nunc pro tunc may always be entered. Most authorities hold that, in such cases, a nunc pro tunc entry as of the date of the former judgment is sufficient to dissolve the marriage relation as of said former date. Zahorka v. Geith, 129 Wis. 498, 109 N. W. 552; Tikalsky v. Tikalsky, 166 Minn. 468, 208 N. W. 180; In re Estate of Cook, 77 Cal. 220, 17 P. 923, 19 P. 431, 1 L. R. A. 567, 11 Am. St. Rep. 267; Id., 83 Cal. 415, 23 P. 392; Cameron v. Cameron, 105 W. Va. 621, 143 S. E. 349; Smith v. Smith, 27 Ohio Dec. 508; Rush v. Rush, 97 Tenn. 279, 37 S. W. 13; Newton v. Newton, 166 Mich.

421, 132 N. W. 91; 27 C. J. S., Divorce, 797, section 163; 17 Am. Jur. 358.

Appellant complains that the nunc pro tunc entry was made without notice. In this case the record, without extraneous proof, showed beyond question the judicial decision and docket order "plaintiff decreed divorce" and that the failure to enter the decree was due to inadvertence.

Under the practice of many jurisdictions, it has been held unnecessary to give notice to adverse or interested parties of applications to courts to correct manifest errors in the records of their judgments by nunc pro tunc entries. 30 Am. Jur. 880; Moore v. Shook, 276 Ill. 47, 114 N. E. 592; Plankerton v. Continental Cas. Co., 180 Minn. 168, 230 N. W. 464.

Ruby v. Wolf, 39 Ohio App. 144, 146, 177 N. E. 240, 241, states:

"When the judge acted upon * * * memorandum found in the records which displayed beyond question that an entry previously made had been entered by mistake of the clerk, or that the error was clerical in its character, the court can proceed in the exercise of its discretion to correct the same without previous notice being given to any of the parties affected, but, where the court has to rely upon extraneous evidence in order to determine whether or not a clerical error has been made in the journal of the court, proper practice would require that the parties affected thereby should be duly notified, * * *."

See, also, Tresemer v. Gugle, 70 Ohio App. 409, 42 N. E. 2d 712.

The authorities heretofore cited with reference to nunc pro tunc entries deal largely with questions of practice and very little with questions of jurisdiction. Under the collateral attack in this case, appellant is required to show that the nunc pro tunc entry was absolutely void because the court had no jurisdiction. Jurisdiction of the subject matter and jurisdiction of the person at the time of the original decision are not open to question. The only question is whether or not notice of the proposed nunc pro tunc entry was *essential to jurisdiction of the person.*

It is a fundamental rule that notice is not necessary to juris-

diction where the court is not changing the decision as made or altering its conclusion but is merely exercising its inherent power to make the record speak the truth by recording judicial action previously and actually taken by it or rectifying clerical errors. See Ruby v. Wolf, supra. Having had jurisdiction of the parties and subject matter when the decision was made, the power of the court to control the record and its ministerial officers does not depend upon the continued presence of the parties. They cannot withdraw and defeat the inherent power of the court to make its actual decision effective or to make its record speak the truth. It is true that, by usage or in the interests of justice, in many cases notice may be required and failure to give notice may be error. But that is not because the court has lost jurisdiction of the parties. See 13 I. L. R. 426 et seq.

It is also the rule that jurisdiction of the subject matter and person continues at least until the rendition and recording of a final judgment. 21 C. J. S. 147, section 94; 13 I. L. R. 440. In the case at bar the judgment was not actually entered and recorded until the nunc pro tunc entry.

It is our conclusion that the decree of divorce was not void for lack of jurisdiction. For that matter, it does not appear that the procedure was even erroneous under Ohio practice. We hold also that under the nunc pro tunc entry the effective date of the decree was the date of the original decision and docket entry in 1935.

IV. Appellant contends she is an innocent third person who acquired vested interests before said nunc pro tunc entry was made, and, therefore, that said entry could not affect her said property rights. She relies upon statements in Johnson v. Harlan, 15 Ohio App. 247, and Coe v. Erb, 59 Ohio St. 259, 52 N. E. 640, 69 Am. St. Rep. 764, to the effect that the entry of a judgment nunc pro tunc will not be made where it will prejudice the rights of an innocent third person acquiring interests without notice of the rendition of any judgment. A more complete statement of the general rule is found in Webb v. Western Reserve Bond & Share Co., 115 Ohio St. 247, 258, 153 N. E. 289, 292, 48 A. L. R. 1176, which quotes with approval from 1 Freeman, Judgments, section 138:

" 'If one not a party to the action has, when without notice of the rendition of the judgment or of facts from which such notice must be imputed to him, advanced or paid money or property, or, in other words, has become a purchaser or incumbrancer in good faith and upon a valuable consideration, then the subsequent entry of such judgment nunc pro tunc will not be allowed to prejudice him; otherwise, its effect against him is the same as if it had been entered at the proper time.' "

Appellant lived with appellee and decedent during most of their married life. It is not contended that appellant took any action or parted with any rights in the belief that appellee was not divorced. Nor does appellant claim that prior to Frank Hobson's death she believed appellee had not been divorced from Miller. Undoubtedly, appellee and Frank Hobson firmly believed they were legally married. It may be noted that the evidence indicates the former husband, Miller, has remarried and has children from that union. We are unwilling to assume that appellant believed appellee's marriage to appellant's son was bigamous. The nunc pro tunc entry made the record in the Ohio court show what appellant apparently believed it had theretofore shown. Appellant was not an innocent third person without notice within the meaning of the foregoing doctrine, and her claim to the workmen's compensation is not entitled to preference over appellee's rights as evidenced in part by the nunc pro tunc entry. See Julien Gas Light Co. v. Hurley, 11 Iowa 520; Webb v. Western Reserve Bond & Share Co., supra; In re Ackermann, 6 Cir., Ohio, 82 F. 2d 971.

Under section 1402, Code of Iowa, 1939, appellee, as the surviving spouse of decedent, is conclusively presumed wholly dependent upon him. Our conclusions heretofore noted require an affirmance of the judgment affirming the order of the commissioner awarding the workmen's compensation to appellee.—Affirmed.

All JUSTICES concur.