PORT STITT and HELEN FREUDENBURG, coadministrators of estate of Mae Louie Hartstack, appellants, v. HOWARD SUNDERMAN, administrator of estate of Albert J. Hartstack, deceased, and GRACE V. BOO HARTSTACK, appellees.

No. 48898.

(Reported in 77 N.W.2d 629)

JUNE 19, 1956.

REHEARING DENIED SEPTEMBER 24, 1956.

Stipe, Davidson & Hemphill, of Clarinda, for appellants.

Ferguson, Ferguson & Falk, of Shenandoah, for appellees.

OLIVER, J.—The guardian of Mae Louie Hartstack, insane, brought suit against the administrator of the estate of Albert J. Hartstack, deceased, and Grace Boo Hartstack, asking that the court declare and determine the rights and privileges of said insane ward, under her contract of marriage with decedent, and her present legal relation thereunder. The petition assails a decree of divorce procured in Nevada by decedent from said insane ward, alleging the Nevada court was induced to proceed by decedent's fraudulent representation of residence in Nevada, whereas both decedent and Mae Louie Hartstack were residents of Iowa and the Nevada court had no jurisdiction to hear and determine said divorce suit, and asking that the status of Mae Louie Hartstack as decedent's surviving widow and her rights as such, be established and restored against decedent's estate and against defendant Grace Boo Hartstack, who claimed to be decedent's surviving spouse by virtue of a subsequent purported ceremony of marriage with decedent.

Upon trial the court found: Albert and Mae were married in 1915, resided in Ringgold County, Iowa, for four years and in Page County, Iowa, until 1948, since which time Mae had been confined in the State Hospital for the Insane at Clarinda, Iowa. Albert continued to reside in Page County. December 15, 1950, he made a sojourn to Nevada, and there instituted a divorce suit, January 26, 1951, which terminated in a decree of divorce against Mae, March 6, 1951. On that same date he married defendant Grace Boo, a resident of Page County, Iowa,

in Las Vegas, Nevada. Albert and Grace immediately returned to and lived in Page County, Iowa. Later they moved to Montgomery County, Iowa, where they continued to reside until Albert's death. Albert was at no time a bona fide resident of Nevada, but his sojourn to that state "was for the sole purpose of obtaining a divorce, and none other."

The "Conclusions of Law" recite: Albert and Mae having at all times resided in Iowa, the Nevada court "did not have jurisdiction of the parties or subject matter of the divorce action and (it) is a nullity so far as its effect upon the property rights of Mae Louie Hartstack as the surviving widow of Albert J. Hartstack, and that the said Mae Louie Hartstack is entitled to the interests of a surviving spouse in property left by the decedent, Albert J. Hartstack"; that the Iowa court will inquire "into the fraud practiced upon the Nevada court by the decedent, Albert J. Hartstack, claiming that he was a bona fide resident of the State of Nevada, when in truth and in fact he was a resident of the State of Iowa.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Mae Louie Hartstack be and she is entitled to the *one-third* distributive share in the estate of Albert J. Hartstack, deceased, that a surviving widow would be entitled to in said estate, *as provided in section 636.5, of the 1954 Code of Iowa,* the amount and extent thereof to be determined by the Probate Court of Montgomery County, Iowa, the forum in which said estate is now pending."

The judgment, not including the italicized words, was rendered August 8, 1955, a day of March 1955 term of Page District Court. September 7, 1955, plaintiff appealed from the part of the judgment reciting Mae was entitled to: "distributive share in the Estate of Albert J. Hartstack, deceased, that a surviving widow would be entitled to in said Estate." On October 4, a day of the second term following said March term, the court, apparently upon its own motion and without notice to plaintiff, made an order entitled "Nunc Pro Tunc Order", which states in part: "The court further finds that the wording used in the decree is indefinite as to the meaning of said decree, and that the following nunc pro tunc order should be entered:

"IT IS HEREBY ORDERED that the last paragraph of the decree entered as of August 8, 1955, be and the same is hereby corrected by inserting the word 'one-third' between the words 'the' and 'distributive' in the first line of the last paragraph of said decree, and by inserting the words 'as provided in section 636.5 of the 1954 Code of Iowa' between the words 'estate' and 'the' appearing in the fourth line of the last paragraph of said decree."

This order merely added to the original judgment the words we have above italicized.

Defendants have not appealed. After plaintiff appealed, Mae Louie Hartstack died and Port Stitt and Helen Freudenburg, coadministrators of her estate, were substituted as appellants.

The facts found by the trial court required the conclusion of law, stated in the judgment entry, that the Nevada court "did not have jurisdiction of the parties or subject matter of the divorce action * * *." That conclusion is not questioned in this appeal. The controversy here stems from the further conclusion that the divorce action was a nullity so far (only) as it affected the property rights of Mae as Albert's widow. The appeal is from the adjudication that she was entitled (only) to the distributive share in his estate, "that a surviving widow would be entitled to." It may be observed there was no declaration or adjudication that Mae was or was not Albert's widow. The judgment made no reference to that proposition. Appellants contend Mae was Albert's widow with all the rights pertaining to such status.

Although there are some decisions to the contrary, the more generally accepted rule is that the death of one of the parties does not bar the vacation of an invalid divorce decree, for the purpose of establishing property rights. 17 Am. Jur. 378, Divorce and Separation, section 462; 27 C. J. S. 815, Divorce, section 171a. Among the leading cases enunciating this doctrine are three much cited Iowa decisions written by the late Judge Ladd. In Lawrence v. Nelson, 113 Iowa 277, 278, 85 N.W. 84, 57 L. R. A. 583, 584, as in the case at bar, there was a purported subsequent marriage by the husband to defendant. The decision states:

"Each party to this record is a single woman. This is inevitable, whatever the character the decree of divorce. If valid, it merely fixes the plaintiff's status as such a few years earlier than otherwise was accomplished by the death of Henry ·Lawrence. If invalid, setting it aside will not affect her status as an unmarried woman. And the court will not, for the mere purpose of satisfying a sentiment, inquire which is the widow of the deceased. But, where some property right hinges on the question, the past status of these parties may become the subject of judicial investigation."

The court adjudged the decree of divorce invalid and stated it was immaterial whether defendant knew of the relation between plaintiff and decedent.

Wood v. Wood, 136 Iowa 128, 113 N.W. 492, 12 L. R. A., N. S., 891, 125 Am. St. Rep. 223, holds a judgment of divorce or annulment may be assailed for fraud the same as any other decree, even after the death of one or both of the parties, not for the purpose of continuing the controversy touching the right of divorce itself, but to ascertain the correctness of the decree with relation to property rights.

The third decision by Judge Ladd is Dennis v. Harris, 179 Iowa 121, 141, 153 N.W. 343, 350. It states some courts have held a decree of divorce, though the product of the grossest fraud, may be effectual in depriving the wronged spouse of the property rights incident to the marriage relation, but the clear weight of authority is the other way. After the citation and consideration of various authorities the court concludes:

"We are of opinion, regardless of what the relief may be denominated, that, upon proof that a decree of divorce has been obtained by fraud or duress, it may be set aside even after the death of the perpetrator of such fraud, and the relief awarded sufficient to compensate the financial loss consequent upon the wrong perpetrated."

The parties to the case at bar express no disagreement with the foregoing decisions.

In McCraney v. McCraney, 5 (Clarke) Iowa 232, 68 Am. Dec. 702, the bill (5 Iowa 233) "prays to so far vacate and set

aside the decree of divorce, as to give complainant her dower, and a distributive share of one third in the personal estate of the deceased husband. * * * Complainant does not ask to disturb said sentence of divorce, except so far as it may operate as a bar to her right [5 Iowa 234] of dower * * * [etc.]. The relief prayed for was granted by the court below, the decree expressly reciting, that the sentence of divorce shall not be considered as vacated in any other respect, except to the extent to allow the complainant to recover her dower, and distributive share, as aforesaid."

In reversing the judgment the court stated: (5 Iowa 251) "And where, as in this case, the sentence of divorce, which adjudges her guilty, and by virtue of which, she, by the law, forfeited all her rights acquired by the marriage, remains in full force, in no manner reversed or set aside, the wife, upon no fair or legitimate reasoning, can be entitled to dower. * * * she, after his death, is not entitled to dower, nor to a portion of his estate, by virtue of the former marital relation, so long as such sentence of divorce remains in force. * * * [5 Iowa 252] This decree gives the complainant dower in the lands, and one third of the personal estate, and at the same time, leaves so much of the sentence of divorce as dissolved the bonds of matrimony, in full force. * * * It gives complainant dower, and yet in effect recognizes the continuance of the second marriage to the time of the husband's death. We say, in effect, for this is doubtless what is particularly contemplated, by the clause which provides that the decree of divorce shall not be vacated as to other persons, or in any other respect. * * * [5 Iowa 253] If the sentence of divorce was void for fraud or duress, then it was void, not in part, but in all its parts, and should have been so declared. * * * There cannot be two widows, lawfully entitled to dower, any more than there can be two wives, legally entitled to the support, care, protection and name of the husband. And, in this case, either complainant or respondent was entitled to the dower estate, to the exclusion of the other. Both could not be thus entitled. [Citations] The bill in this case does not ask to set aside the decree of divorce entirely and for all purposes, but only to the extent already stated. We think this cannot be done, and beyond this, perhaps, we may not go."

The bill in the McCraney case prayed to "so far vacate and set aside the decree of divorce, as to give complainant her dower, and a distributive share", and the decree expressly recited that the divorce should not be considered as vacated in any other respect. Appellees contend the case at bar, although based on the claim the divorce was invalid, "in no way seeks to set aside the divorce decree in so far as it dissolved the marital relation * * *."

The pleadings are not shown in the printed record and we caused them to be certified to this court. Rule of Civil Procedure 341. Among other things, the petition asks the court to declare and establish the rights and privileges of Mae under her contract of marriage with decedent, her present legal relation thereunder, her status as his surviving widow and her rights as such. Although the petition is complicated and the language might be simplified, we conclude it may be properly interpreted as asking, in part, that the divorce decree be adjudicated invalid, without exception.

 The determinative conclusion of the trial court, in this case, is that the Nevada court did not have jurisdiction of the parties or subject matter in the divorce suit. We have already stated the findings of fact require this conclusion. Under the circumstances, it necessarily follows that the divorce was a nullity, not merely as to property rights of Mae Louie Hartstack, but entirely and for all purposes. It is true a suit of this nature may be maintained only when some property right hinges upon the status of the parties to the prior proceeding. But the ultimate question is one of status, as affected by the adjudication of the validity or invalidity of the prior proceeding. Hence the conclusion here that the divorce was a nullity leads to the further conclusions, that Mae remained the wife of Albert, that his purported marriage to defendant Grace was invalid, and that Mae was his surviving widow. We hold the trial court should have adjudged Albert's divorce from Mae was a nullity for all purposes, that his subsequent marriage was invalid and that Mae was his surviving widow and was entitled to all the property rights of a surviving widow.

The validity and meaning of the nunc pro tunc order of October 4 are argued in the briefs. We deem it here immaterial

whether that order was ineffective or whether it changed the scope of the original judgment, or merely clarified its language. In either form the judgment was erroneous.

The judgment is reversed and the cause is remanded for judgment in accord herewith.—Reversed and remanded.

All JUSTICES concur.