## WINTERS *v.* WINTERS.

No. 41132 May 4, 1959 111 So. 2d 418

*T. Fred Wicker,* Pontotoc, for appellant.

*Cunningham & Cunningham,* Booneville, for appellee.

LEE, J.

Earl Winters instituted habeas corpus proceedings against Mrs. Josephine Winters to obtain custody of their daughter, Marjorie Jeanette. The Chancery Court of Tishomingo County denied the relief prayed for, and instead, awarded custody to the mother. From the decree entered, he appealed.

The question before the trial court was whether or not full faith and credit should be given to a decree of the Chancery Court of Washington County, Arkansas of date of September 24, 1957, by which Winters was awarded a divorce and custody of the child. The same question recurs here. The appellant contends that the decree was valid and is res judicata as to custody while the appellee contends that the decree was invalid and is entitled to no consideration on the question of custody.

The applicable part of Sec. 34.1208, Arkansas Statutes 1947, Annotated, is as follows: *"Matters which must be proved.* The plaintiff, to obtain a divorce, must prove, but need not allege, in addition to a legal cause of divorce:

"First. A residence in the State for three (3) months next before the final judgment granting a divorce in the action and a residence for two (2) months next before the commencement of the action * * *."

Section 34.1208.1 of the above named code is as follows: *"Term 'residence' defined.* The word 'residence' as used in Section 34.1208 is defined to mean actual presence and upon proof of such the party alleging and offering such proof shall be considered domiciled in the State and this is declared to be the legislative intent and public policy of the State of Arkansas."

The parties hereto were married in October 1953 and Marjorie Jeanette was born to them on May 6, 1956. They lived in the City of Pontotoc. On August 24, 1957, Earl filed his bill of complaint against Mrs. Winters in the Chancery Court of Washington County, Arkansas for

the purpose of obtaining a divorce from his wife and to secure custody of the child; and on September 24, 1957, that court granted a decree, awarding him both a divorce and the custody of Marjorie Jeanette.

Winters testified that he left Mississippi and went to Arkansas on June 24, 1957. His daughter, Mrs. Juanita Russell, by a former marriage, and his sister in law, Mrs. Margie Ree Winters, whom he married on March 1, 1958, at first gave corroboration as to the date, but, after cross-examination, their evidence was of very little, if any, value whatever. On the contrary, Mrs. Josephine Winters testified positively that he left Pontotoc on Monday, July 8, 1957, taking the sixteen-month old child without her knowledge. The evidence and records of Quick Frozen Foods, Inc., in Tupelo, Mississippi, where Winters was employed, showed conclusively that he worked there all of the week ending June 29, and the first three days of the following week, and that on Friday, July 5, 1957, he signed for his check for the previous week's work.

The court found as a fact that Winters had neither been physically present nor had he been a bona fide resident of the State of Arkansas for a period of sixty days prior to the filing of his bill of complaint. The finding of the court on that question was in accord with the overwhelming weight of the evidence, and was manifestly correct.

The existence of the residence for the periods of sixty and ninety days, respectively, before the commencement of the action and the granting of the divorce, was a condition precedent to jurisdiction of the Arkansas court. If Winters offered evidence to establish those conditions, such evidence was indeed false, and its introduction constituted a fraud upon that court.

Besides, the parties to this litigation were citizens of this state. It is clear that Winters, when he went to Arkansas, did so for the sole purpose of ob-

taining a divorce. Clearly he did not intend to remain there even though he said that he did. The fact remains that, when he got his decree, he immediately came back to Pontotoc in this state. The granting of a divorce, under such circumstances, is contrary to the public policy of this state; and the courts of this state will determine for themselves as to the jurisdiction of a court in another state to render such decree. Miller v. Miller, 173 Miss. 44, 159 So. 112, which declined to give full faith and credit to an Arkansas decree; Hall v. Hall, 199 Miss. 478, 24 So. 2d 347, where such faith and credit was withheld from a decree of a Nevada court; Lynch v. Lynch, 210 Miss. 810, 50 So. 2d 378, where again full faith and credit was not accorded to a decree of an Arkansas court. See also Anglin v. Anglin, 211 Miss. 405, 51 So. 2d 781; American Cas. Co. v. Kincaid, 219 Miss. 653, 69 So. 2d 820. There is nothing in Sherrer v. Sherrer, 68 S. Ct. 1087, 334 U. S. 343, 92 L. Ed. 1429 or in Coe v. Coe, 68 S. Ct. 1094, 334 U. S. 378, 92 L. Ed. 1451, in conflict with the above principles.

But the appellant says that Mrs. Winters executed a waiver of process and an entry of appearance in the cause, and, for that reason, she cannot now attack the validity of the decree.

A sufficient answer to this question is that, if the Arkansas court did not have jurisdiction, it could not take jurisdiction merely from the appearance of the parties.

But the evidence was ample to show that, while Mrs. Winters was at work, the appellant took the child away, leaving no information as to where he had gone. It was over a week later that she found out that he and the child were in Arkansas. She went there immediately and tried to get her baby, but he refused to let her have it or bring it back to the state. When she returned to Arkansas on August 23, 1957, her husband told her that, unless she signed some papers, she would

never see her baby or have any custody at all over it. Under those circumstances, she went with him and Margie Ree Winters to a lawyer at night and signed a paper, which turned out to be the waiver and entry of appearance in question. The bill of complaint had not been drawn or filed. She did not participate in the trial in any way; and it is too much to say that a mother, in a strange state, away from relatives and friends, without counsel or advice, from whom her infant child had been suddenly snatched away, should be bound by a waiver, signed under such conditions and circumstances, and be forever prohibited from contesting a decree based on an appearance obtained in that manner.

In 28 A. L. R. 2d 1320, it is said: ''The question as to whether the rule of the Sherrer and Coe cases includes a situation in which the non-resident merely entered his appearance in the divorce proceedings without any other participation therein, has not yet been squarely decided by the Supreme Court of the United States.'' But in the same work, at page 1321 thereof, it is said that ''even though the wife, a resident of Oklahoma, entered her appearance in divorce proceedings instituted by her husband against her in Arkansas, the Arkansas decree of divorce was held invalid for lack of the husband's domicile in Arkansas, in subsequent proceedings for divorce and alimony instituted by the wife in Oklahoma, where it was shown that she had filed no pleadings in the Arkansas divorce action, was not represented therein by counsel, and was not present at the trial when the husband secured the divorce decree, and that no issue was presented to the Arkansas court relating to the jurisdictional requirement of the husband's domicile there. Brasier v. Brasier (1948) 200 Okla. 689, 200 P. 2d 427.''

 █ Because of the fraud which was perpetrated upon the Arkansas court, the courts of this state are not bound to give full faith and credit to the decree of that state here under consideration. Neither is the ap-

pellee, on account of her execution of the waiver and entry of appearance, under the circumstances shown, bound by that decree. Manifestly the trial court was correct in refusing to give full faith and credit to the decree.

■■ There were criminations and recriminations as to the fitness and suitability of the parties to have the custody of the child. The learned chancellor observed the demeanor of the witnesses and was better able to determine the truth or falsity of charges and counter-charges than an appellate court; and he was amply justified by the evidence in awarding custody to the mother. Besides there was no substantial basis upon which to deprive the mother of the custody of her little daughter of such tender age.

From which it follows that the decree of the trial court must be, and is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Holmes,* and *Gillespie, JJ.,* concur.