Hazel M. **COOPER**, Appellant,

v.

Mary R. **COOPER**, Appellee.

No. 55932.

Supreme Court of Iowa.

April 24, 1974.

N. E. McManus, Keokuk, and J. R. McManus, by Philip F. Miller, Des Moines, for appellant.

Walker, Concannon & Anderson, by Barry M. Anderson, Keokuk, for appellee.

Heard before MOORE, C. J., and RAWLINGS, REES, HARRIS, and Mc-CORMICK, JJ.

RAWLINGS, Justice.

By action in equity plaintiff Hazel M. Cooper (Hazel) seeks to void a Nevada divorce decree granted her former husband Raymond E. Cooper (Cooper) and his subsequent marriage to defendant Mary R. Cooper (Mary). Trial court held adverse to plaintiff and she appeals. We affirm.

December 21, 1935, Hazel and Cooper were married at Washington, Iowa.

December 8, 1958, Hazel obtained an Iowa decree of separate maintenance.

About October 7, 1969, Cooper moved from Keokuk to Reno, Nevada.

December 1, Cooper there filed an action for divorce.

December 5, notice thereof was personally served on Hazel in Iowa.

December 30, Hazel was adjudged to be in default for want of appearance and divorce accordingly granted Cooper.

January 9, 1970, Cooper returned to Iowa.

February 27, Cooper and Mary were married.

Sometime prior to July 1971 Cooper died.

January 5, 1972, Hazel commenced the instantly involved action.

In course of trial plaintiff testified she received separate maintenance payments from Cooper until date of his death and although notice was served upon her regarding the aforesaid Nevada divorce action she neither appeared nor contested same. Plaintiff also offered in evidence a letter from Cooper to his son, apparently written in August 1969, which stated, in part: "I'm way out in the golden west and I'm sure you must know why. After 13 yr. of harassment and uncertainty I'm applying for a divorce which I never could get in Iowa." Also, "[I] might even stay here as it is a wonderful climate."

Defendant, the only other witness, testimonially stated: (1) Dr. Cooper, an Iowa anesthesiologist, moved to Reno October 7 or 9, 1969; (2) he was there granted a license to engage as a general practitioner but was unable to secure a permit in the field of anesthesiology; (3) while in Reno Dr. Cooper worked at Washoe Medical Center; (4) he lived at Caisson Apartments in Reno; (5) he had established a checking account in a Reno bank; (6) he secured a Nevada driver's license but did

not obtain Nevada automobile license plates; (7) he kept his Keokuk office open but only for the collection of bills due, which, when received were deposited for payment of fire related repairs to the Keokuk office and apartment. On a few occasions Mary administered shots to some patients but only on orders from other doctors.

The question here posed is whether Dr. Cooper had established that domicile in Nevada essential to the jurisdictional power of a court to there grant him a divorce from this plaintiff.

I. Our review is de novo. See Iowa R.Civ.P. 334. Although weight is accorded trial court's findings we are not bound by them. See Iowa R.Civ.P. 344(f) (7).

II. It is prefatorily understood, death of the party obtaining an allegedly invalid divorce does not preclude an action to set aside such decree for the purpose of establishing property rights. See In re Estate of Roedell, 253 Iowa 438, 442, 112 N. W.2d 842 (1962); Stitt v. Sunderman, 247 Iowa 1132, 1135–1136, 77 N.W.2d 629 (1956).

III. On the other hand a party seeking to collaterally invalidate a foreign divorce decree for lack of domiciliary jurisdiction assumes a heavy burden. See 24 Am.Jur.2d, Divorce and Separation, §§ 961–962; 27B C.J.S. Divorce § 421; Annot., 28 A.L.R.2d 1303, 1317.

To the same effect is this statement in the case of In re Estate of Roedell, 253 Iowa at 442–443, 112 N.W.2d at 845:

"The general rule is stated in 27B C.J.S. Divorce, § 420, page 950, as follows: 'The decree is presumptively entitled to full faith and credit unless it is affirmatively demonstrated that the court did not have jurisdiction * * *. It follows from these presumptions that the burden of impeaching a foreign decree for want of jurisdiction rests on the party who asserts its invalidity, such as a lack of jurisdiction of the parties, or lack of service of process.'

"To warrant the setting aside of a judgment in a collateral proceeding for fraud, the evidence should clearly establish the fraud. Reimers v. McElree, 238 Iowa 791, 28 N.W.2d 569; Hulverson v. Hutchinson & Co., 39 Iowa 316.

"In cases involving allegations of fraud various words are used in stating the quality and quantum of proof required. An allegation of jurisdictional fraud attacking a judgment or decree of a sister state is a matter of concern. The evidence to sustain such an allegation should be clear, satisfactory and convincing."

IV. Another facet of this case which must be accorded recognition is Cooper's February 27, 1970 marriage to defendant.

In that regard we have held: " 'Courts very properly manifest great reluctance in setting aside decrees of the divorce after a second marriage has taken place, and will not do so save upon the most satisfactory showing.' " Hobson v. Dempsey Constr. Co., 232 Iowa 1226, 1229, 7 N.W.2d 896, 899 (1943). See also 24 Am.Jur.2d, Divorce and Separation, §§ 357, 479 and 961–962; 27B C.J.S. Divorce §§ 419–421.

It is, of course, understood Cooper's post-divorce remarriage would not alone bar us from setting aside the Nevada decree. Rather it stands as a relevant factor to be considered in resolving the question now at hand. See Swift v. Swift, 239 Iowa 62, 69, 29 N.W.2d 535 (1947).

V. Since "domicile" is commonly deemed essential to divorce jurisdiction it is evident such is the determinative element in this case. See Williams v. State of North Carolina, 325 U.S. 226, 229, 65 S.Ct. 1092, 1095, 89 L.Ed. 1577 (1945).

Mindful of the foregoing we turn now to Julson v. Julson, 255 Iowa 301, 305, 122

N.W.2d 329, 331 (1963), where this court stated:

> "The change of a person's domicile is considered a serious matter. A domicile once acquired continues until a new one is perfected by the concurrence of three essential elements: (1) a definite abandonment of the former domicile; (2) actual removal to, and physical presence in, the new domicile; (3) a bona fide intention to change and to remain in the new domicile permanently or indefinitely. (Authorities cited).
>
> "Domicile is largely a matter of intention, which must be freely and voluntarily exercised. 28 C.J.S. 18, Domicile § 11, p. 18. The intention to change one's domicile must be a present and fixed intention and not dependent upon the happening of some future or contingent event. 28 C.J.S. Domicile § 11e(4), p. 20. Because it is essentially a matter of intent, precedents are of slight assistance and the determination of the place of domicile depends upon all the facts and circumstances in each case."

See also Goodrich, Conflict of Laws, §§ 22, 26–29 (4th ed. Scoles 1964); Restatement, Second, Conflict of Laws, §§ 15–16, 18; 3 Nelson on Divorce and Annulment, §§ 33.-33–33.34 (2d ed. 1945); 25 Am.Jur.2d, Domicile, §§ 16–18; 28 C.J.S. Domicile, § 11; 24 Am.Jur.2d, Divorce and Separation, § 246; 27B C.J.S. Divorce §§ 336–337.

VI. In light of the foregoing the problem posed is whether plaintiff proved by clear, satisfactory and convincing evidence Cooper did not have the requisite intent to establish a domicile in Nevada at the time here concerned. As previously indicated that issue must be resolved upon an evaluation of all relevant facts and circumstances disclosed by the record. This in turn necessitates a review of the factual situation at cost of some unavoidable repetition.

On one hand these testimonially adduced facts favor timely establishment of domicile by Cooper in Nevada: (1) he lived there at least from October 9, 1969, to January 9, 1970; (2) he was there granted a license to practice medicine; (3) he obtained professional employment in a Reno medical center; (4) he rented and resided in a Reno apartment; (5) he opened a Reno bank account; (6) he obtained a Nevada driver's license; and (7) he closed his Keokuk office except for collection of accounts receivable.

Looking to the other side of the coin it appears Dr. Cooper: (1) wrote his son sometime in August 1969 expressing an intention to secure a Nevada divorce; (2) he did not there obtain automobile license plates; (3) he returned to Iowa ten days after entry of the Nevada divorce decree; and (4) he continued payments to Hazel of support money due under the Iowa separate maintenance decree. Plaintiff takes the position these last mentioned events overcome the presumption a divorce supportive Nevada domicile was established by Dr. Cooper. This necessitates a detailed examination of said events.

VII. First, it appears Hazel leans heavily on the August 1969 letter from Cooper to his son which indicates a contemplated move to Nevada for the purpose of securing a divorce.

■ It must, at the outset, be conceded that *if* Cooper later went to Nevada for the sole purpose of obtaining a divorce absent *requisite domiciliary intent* then jurisdiction of a court to there grant him a divorce would be lacking. See Winters v. Winters, 236 Miss. 624, 111 So.2d 418, 420 (1959); Rappel v. Rappel, 39 Misc.2d 222, 240 N.Y.S.2d 692, 695 (1963), aff'd 20 A. D.2d 850, 247 N.Y.S.2d 995 (1964); Sargent v. Sargent, 225 Pa.Super. 1, 307 A.2d 353, 356 (1973); Restatement, Second, Conflict of Laws, § 18.

■ But the mere fact that one of Dr. Cooper's purposes in moving to Nevada may have been to secure a divorce such would not, ipso facto, preclude him from there establishing a domicile.

As stated in Peff v. Peff, 2 N.J. 513, 67 A.2d 161, 164 (1949); "A person may legitimately move to another state in order to avail himself of its laws, including its divorce laws, the only requirements being absolute good faith in the taking up of such residence and of the intention of remaining there—the animus manendi." Accord, Shady v. Shady, 10 Ill.App.3d 801, 295 N.E.2d 130, 134 (1973); Linck v. Linck, 31 Ohio Misc. 224, 288 N.E.2d 347, 349 (1972); Commonwealth v. Messing, 195 Pa.Super. 334, 171 A.2d 893, 894 (1961). See also 24 Am.Jur.2d Divorce and Separation, §§ 251–253; 27B C.J.S. Divorce § 340.

Looking again to the subject August letter we find Cooper significantly stated, in part, he "might even stay here [Nevada] as it is a wonderful climate." Also, as heretofore revealed, Cooper moved to Nevada in October 1969.

With regard to the foregoing, trial court aptly observed "the contents of the letter are susceptible to the argument that between August and October he [Dr. Cooper] made up his mind to permanently stay in Nevada and to make Nevada his domicile."

VIII. Plaintiff also contends Cooper's failure to obtain Nevada automobile license plates militates against his acquisition of domicile in that state. See Elwert v. Elwert, 196 Or. 256, 248 P.2d 847, 853 (1952).

It still remains, however, Cooper moved to Nevada in October and as explained by defendant the doctor probably intended to wait until January of the following year to so license his car.

IX. Next to be reviewed is the matter of Dr. Cooper's return to Iowa ten days after entry of the Nevada decree.

Ordinarily this alone might be deemed to indicate Cooper's sole purpose in moving to Nevada was to there secure a divorce.

Assuming, arguendo, he was so motivated in moving there such would not, per se, negate a good faith acquisition of domicile in that state. See Commonwealth v. Lorusso, 189 Pa.Super. 403, 150 A.2d 370, 374–375 (1959); Goodrich, Conflict of Laws, § 29; 24 Am.Jur.2d Divorce and Separation, § 252; 27B C.J.S. Divorce §§ 339–340.

Furthermore, Cooper's early return to Iowa was inferentially attributed by defendant to the doctor's inability to obtain an anesthesiologist's license in Nevada due to an existing overabundance of such specialists.

Touching on the same subject, exhibits in evidence reveal Dr. Cooper elected to apply for and did obtain a permanent general practitioner's license for which at least $200 was paid.

X. Last to be considered is the matter of continued payments under the Iowa separate maintenance decree. Pertinent thereto is Estin v. Estin, 334 U.S. 541, 546–549, 68 S.Ct. 1213, 1217–1218, 92 L.Ed. 1561 (1948). The court there essentially held, any determination as to whether a sister state divorce terminates obligations under a prior in-state separate maintenance decree is a matter determinable under local law.

In that regard we have, in substance, taken the position the entry of a foreign state adjudication in an uncontested divorce action has no effect upon an existing Iowa separate maintenance decree. See Miller v. Miller, 200 Iowa 1193, 206 N.W. 262 (1925); Annot., 49 A.L.R.3d 1266, 1299–1304. See also Bennett v. Tomlinson, 206 Iowa 1075, 1078–1080, 221 N.W. 837 (1928).

Thus, absent any attempt by Cooper to modify the separate maintenance decree, continued payments thereunder bear no relationship to the matter of his Nevada domicile.

XI. Other relevant facts and circumstances to which reference has heretofore been made either heavily favor a finding that Dr. Cooper did establish a timely domicile in Nevada, or are not of such weight as to otherwise tip the scales.

We are accordingly persuaded and now hold plaintiff failed to negate the presumption of jurisdiction which attends the decree of divorce here in question.

It therefore follows trial court's adjudication must stand.

Affirmed.