724 So.2d 937 (1998)
Edward B. CARR, Appellant,
v.
Mary Juanita Dennis CARR, Appellee.
No. 98-CA-00097 COA.
Court of Appeals of Mississippi.
December 18, 1998.
Rehearing Denied February 9, 1999.
Certiorari Denied April 8, 1999.
*938 Ronald Louis Taylor, Southaven, Attorney for Appellant.
H.R. Garner, Leigh A. Rutherford, Hernando, Attorneys for Appellee.
BEFORE BRIDGES, C.J., PAYNE, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. The chancellor of DeSoto County refused to recognize a divorce that Edward B. Carr obtained in the Dominican Republic, and his subsequent marriage in Nevada. As a result of this refusal, the chancellor modified Carr's visitation with his children, forbidding *939 the presence of the purported new wife whenever Carr's children visited. We affirm as to the invalidity of the divorce but reverse and remand for further proceedings as to visitation.

FACTS
¶ 2. Edward B. Carr and Mary Juanita Dennis Carr were married in Newton, Mississippi on June 8, 1980. They later settled in Collierville, Tennessee, where they resided with their three children, Sarah Elizabeth, Allen Denton, and Leslie Ann, until Edward's move to DeSoto County, Mississippi in 1994. Mary Carr and the children remained in Tennessee.
¶ 3. In January of 1996, Mr. Carr filed a complaint for divorce in the DeSoto County Chancery Court on the grounds of habitual cruel and inhuman treatment and/or irreconcilable differences. The chancellor did not grant the divorce and instead awarded Mrs. Carr separate maintenance and child support. The Carrs were given joint legal custody of their three children.
¶ 4. Still seeking a divorce, Edward traveled to the Dominican Republic in April of 1997. After a two-day visit, he obtained an irreconcilable differences divorce. Mrs. Carr was served with notice of the proceedings but did not appear. Several months later, Mr. Carr married Charlotte Lannom in Henderson, Nevada. Mr. Carr's first and perhaps still wife Mary Carr then filed a petition in the DeSoto County Chancery Court seeking to terminate or modify Mr. Carr's visitation rights with his children. She claimed that her husband now lived in a bigamous and adulterous relationship that was harmful to the children.
¶ 5. Following a hearing held on December 22, 1997, the chancellor entered an order refusing to recognize the Dominican divorce. Consequently, the subsequent marriage was denied recognition as well. The chancellor agreed that adultery and bigamy created the wrong environment and restricted visitation to times and places when Charlotte Lannom was not present.

DISCUSSION

I. The Dominican Republic judgment

A. The divorce
¶ 6. Mr. Carr claims that the only proper jurisdictions to contest the divorce are the Dominican Republic, Nevada, or the first Mrs. Carr's place of residence of Tennessee. At a minimum, he asserts that the issue is whether the divorce would be recognized in Tennessee or Nevada.
¶ 7. Enforcement of judgments from a foreign nation is governed by comity. Laskosky v. Laskosky, 504 So.2d 726, 729 (Miss.1987). "The principle of comity is similar to full faith and credit except that it is not governed by Federal statutes and that its application rests in the discretion of the trial judge." Id.
¶ 8. The United States Supreme Court held that "[u]nder our system of law, judicial power to grant a divorce ... is founded on domicil." Williams v. North Carolina, 325 U.S. 226, 229, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). Regardless of its validity in the nation awarding it, the courts of this country will not generally recognize a judgment of divorce rendered by the courts of a foreign nation unless, by the standards of the jurisdiction in which recognition is sought, at least one of the spouses was a good faith domiciliary in the foreign nation at the time the decree was rendered. According to the Restatement, "[i]t is well settled that a foreign divorce decree will not be recognized as valid where the foreign tribunal lacked jurisdiction, or power, to render judgment." 1 RESTATEMENT, CONFLICT OF LAWS 2D, sec. 98, cmt. c (1971).
¶ 9. The Mississippi Supreme Court has refused to grant full faith and credit to divorces obtained in sister states when neither spouse was a domiciliary of the rendering state. The court refused to recognize a divorce granted by an Arkansas court, finding that "[the husband], when he went to Arkansas, did so for the sole purpose of obtaining a divorce.... The granting of a divorce, under such circumstances, is contrary to the public policy of this state...." Winters v. Winters, 236 Miss. 624, 628, 111 So.2d 418, *940 419 (1959). The court has consistently held that an intent by the complaining party to remain permanently in the foreign state is a prerequisite to such a divorce's obtaining recognition in Mississippi. Anglin v. Anglin, 211 Miss. 405, 51 So.2d 781 (1951); Lynch v. Lynch, 210 Miss. 810, 50 So.2d 378 (1951); Hall v. Hall, 199 Miss. 478, 24 So.2d 347 (1946); Miller v. Miller, 173 Miss. 44, 159 So. 112 (1935).
¶ 10. We apply the same principle to recognition of a divorce acquired in a foreign nation. Mr. Carr must demonstrate that he traveled to the Dominican Republic with the intent of remaining there and not solely for the purposes of securing a divorce. Instead, Carr admitted to the exact opposite. When asked why he made the trip, he replied "To get a divorce." He was not a bona fide domiciliary of the Dominican Republic and had no intention of becoming one. It would be against public policy to recognize the divorce.
¶ 11. Moreover, the chancellor found that to recognize the divorce would "fly in the face of equity." Mr. Carr had been denied a divorce in DeSoto County and attempted to circumvent that denial. We cannot say that the chancellor abused his discretion in making such a determination.

B. Child custody support
¶ 12. Not only did the judgment of the Dominican Republic purport to grant Mr. Carr a divorce, it also made pronouncements on custody and support of the children. For the same reasons that the divorce itself will not be recognized, neither will the terms of the decree that affect other interests.
¶ 13. In addition, two statutes dealing specifically with these issues would not permit recognition of the provisions for custody and support. Under the Uniform Child Custody Jurisdiction Act (UCCJA), which Mississippi adopted in 1982, a custody decree from another state or another nation is entitled to recognition by courts of this state if the foreign court "had assumed jurisdiction under statutory provisions substantially in accordance with [the Act]." Miss.Code Ann. §§ 93-23-5, 93-23-45 (Supp.1998). Under the UCCJA, for a Mississippi court to properly assume jurisdiction, it must be demonstrated that (a) Mississippi is the child's home state, or was within six months preceding the commencement of proceedings; (b) it is in the child's best interest that Mississippi assume jurisdiction because of the a significant connection between the child and at least one parent with Mississippi; (c) the child is present in Mississippi due to abandonment or an emergency exists; or (d) no other state would have jurisdiction. Miss. Code Ann. § 93-23-5 (Supp.1998). None of these jurisdictional criteria have been met.
¶ 14. Mississippi has also adopted the Uniform Interstate Family Support Act, which provides for continuing exclusive jurisdiction by the Mississippi courts, over a child support order, "[a]s long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued...." Miss.Code Ann. § 93-25-17(1) (Supp.1998). Because the obligor, Edward Carr, has continued to be a resident of Mississippi, the DeSoto County Chancery Court retained exclusive jurisdiction over the child support order, and therefore, the order of the Dominican Republic setting child support is not entitled to recognition by the Mississippi courts.

C. Proper forum to contest
¶ 15. Mr. Carr argues that Mary Carr should have been required to prove that his divorce would not have been recognized in either Nevada or Tennessee. Carr argues that Tennessee would recognize this divorce, but the case that he cites did not deal with contested jurisdiction, as both parties had willingly submitted to the jurisdiction of a Dominican Republic court. Hyde v. Hyde, 562 S.W.2d 194, 197 (Tenn.1978). Mary Carr did not appear before the Dominican court, either in person or through counsel. There is authority that Nevada would decline to recognize the divorce. Lugot v. Harris, 499 F.Supp. 1118, 1120 (D.Nev.1980).
¶ 16. Regardless of the law of those two States, under principles of comity we hold that Mississippi does not recognize this divorce.
*941 ¶ 17. We also reject Mr. Carr's argument that Mississippi is not the proper place for Mary Carr to challenge the validity of the divorce. Although she is contesting the validity of the divorce, she does so by way of her motion to restrict Mr. Carr's visitation with his children. Mississippi has jurisdiction over the child custody issues and as such, its courts may properly consider such a motion.

D. Presumption of validity
¶ 18. Mr. Carr also claims that his marriage to Charlotte Lannom is presumed valid in Mississippi. "The law in this state is well settled that a ceremonial marriage raises a presumption that a former marriage has been dissolved either by death or by divorce...." Jeffreys v. Clark, 251 Miss. 129, 168 So.2d 662, 671 (1964), overruled on other grounds, Sheffield v. Sheffield, 405 So.2d 1314 (Miss.1981). "The presumption of its validity is so strong that proof of a former subsisting marriage, in order to be sufficient to overcome this presumption, must be so cogent and conclusive as to fairly preclude any other result." Smith v. Weir, 387 So.2d 761, 763 (Miss.1980).
¶ 19. Mr. Carr's use of such citations ignores the factual forest due to a few presumptive trees. A presumption does not override the fact that Mississippi does not recognize a foreign nation divorce acquired under these circumstances. Any presumption of the validity of Carr's marriage to Lannom is rebutted by proof that he was never legally divorced from his first wife.

II. Restriction of visitation
¶ 20. The chancellor found that Edward Carr and Charlotte Lannom were not legally married and, as a result, restricted Edward's visitation with his children to "times and places when the paramour, Charlotte L. Lannom, is not present...." Carr appeals this decision, arguing that Lannom is his wife, not an adulterous friend, and thus the restriction is unwarranted. While we do not agree that Lannom and Carr are husband and wife, we do agree that the restriction does not conform to the adjustments the supreme court has made to reflect the reality of a large number of modern relationships.
¶ 21. In order for a chancellor to restrict visitation, "there must be evidence presented that a particular restriction on visitation is necessary to avoid harm to the child. Otherwise, the chancellor's imposition of a restriction on a non-custodial parent's visitation is manifest error and an abuse of discretion." Harrington v. Harrington, 648 So.2d 543, 545 (Miss.1994). The court held that the chancellor erred and abused his discretion by restricting visitation where there was no evidence presented that the child was being harmed or in any danger because of contact with the father's girlfriend. Id, at 547. Testimony that the children were confused and did not like their father living with another woman was held insufficient to justify such a restriction. Id. Although the father suggested that he exercise visitation when his lover was not present, the court noted that "[t]his goes further than the law requires.... The better course of action would be that [she] did not stay overnight in the home with the children during that visitation." Id.
¶ 22. "[I]n order for a chancellor to restrict visitation he must find `something approaching actual danger or other substantial detriment to the children.'" Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss.1992) (quoting Cox v. Moulds, 490 So.2d 866, 868 (Miss.1986)). Mary Carr testified that her children were being exposed to a relationship "that is not moral" and that "they come home in tears." She specifically objected to the overnight visitation and cited the fact that both her husband and Ms. Lannom smoked around her younger asthmatic son. She further alleged that Mr. Carr instructed the children to call Ms. Lannom "mother" and treat her as their stepmother. However, Mary Carr also stated that the children look forward to being with their father.
¶ 23. In restricting the visitation, the chancellor relied on the dissenting opinion in Harrington, noting that Edward Carr and Charlotte Lannom were violating Mississippi statutory law by committing adultery. That they are, but the majority opinion in Harrington would not support such a restriction. Although Carr and Lannom's relationship is *942 adulterous, it is no more inappropriate than the relationship in Harrington, in which the couple made no secret of the fact that they were unmarried.
¶ 24. We find that the evidence is insufficient to restrict Mr. Carr's visitation in this manner and accordingly reverse and remand so that the chancellor might consider a restriction consistent with the majority opinion in Harrington.
¶ 25. THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE TAXED ONE-HALF TO EACH PARTY.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND PAYNE, JJ., CONCUR.